REDWOOD GYM, Alice's Health Studio, Cindy's Golden Touch, Gentleman's Quarters, Lynn's Health Studio, Kelly's Health Studio, Barbara's Health Studio, Kim's Health Studio, Cavalier Health Studio, and Continental Health Studio, Plaintiffs and Appellants,

v.

SALT LAKE COUNTY COMMISSION, Salt Lake County Attorney's Office, and Salt Lake County Sheriff's Department, Defendants and Respondents.

No. 16833.

Supreme Court of Utah.

Jan. 19, 1981.

* Crockett, Justice, concurred in this case before his retirement.

Phil L. Hansen of Hansen & Hansen, Robert L. Stolebarger of McDougal, Haley, Dahl & Stolebarger, Salt Lake City, for plaintiffs and appellants.

Jay Stone, Deputy Salt Lake County Atty., Salt Lake City, for defendants and respondents.

HALL, Justice:

Plaintiffs appeal the declaratory judgment of the trial court which upheld the constitutionality of the Salt Lake County "massage parlor" ordinance.

On November 20, 1978, the Board of County Commissioners of Salt Lake County (defendants in this action) enacted Title 15, Chapter 18 of the Revised Ordinances of Salt Lake County. The relevant sections of that enactment read as follows:

Sec. 15–18–1. Definitions. For the purpose of this chapter the following terms shall have the meanings prescribed:

(2) "Masseur" shall mean any person who gives massage for hire; provided that any person who is duly licensed by the Department of Registration to practice the healing arts shall not be included in this definition.

(4) "Employee" means the operator, owner, or manager of a massage establishment and any person performing massages at or on the premises of a massage establishment and also any agent or independent contractor who gives massages at a massage establishment.

Sec. 15–18–3. Requirements for the Issuance of a License. Each individual desiring a massage establishment license or a masseur license shall: (1) Be an individual at least 21 years of age. . . .

Sec. 15–18–4. Sanitary Premises. All applications for a massage establishment license shall be referred to the Salt Lake City-County Board of Health for investigation and a license shall be granted only after a finding by the Salt Lake City-County Board of Health that the proposed premises are sanitary enough to conduct business therein without jeopardizing the public health.

Sec. 15–18–5. Prohibited Acts. The following acts are prohibited:

(1) It shall be unlawful for a masseur to administer, for hire, to any person of the opposite sex, a massage, a fomentation, or a bath. It shall be unlawful for any massage establishment to cause or permit in or about his place of business, an employee to administer a massage upon any person of the opposite sex. This section shall not apply to any treatment administered by any person licensed to practice a healing art or profession under the provisions of Utah Code Annotated, 1953, or any other law of this state.

(2) It shall be unlawful to serve, to store, or allow to be consumed, any alcoholic beverages on the licensed premises of a massage establishment.

(3) It shall be unlawful for a masseur to touch or offer to touch or massage the genitalia of customers.

Sec. 15–18–7. Civil Sanctions. Any unlawful conduct, whether the omission to perform an act required by this ordinance, or the performance of an act prohibited by this ordinance, shall be cause for revocation or suspension of a massage establishment's license or masseur's license. The holder of a massage establishment license may have his or her license revoked or suspended for any and all violations of the provisions of this ordinance committed by his or her employees.

Sec. 15–18–8. Penal Sanctions. The person convicted of violations of this chapter of the Revised Ordinances of Salt Lake County may be fined not to exceed $299.00, imprisoned in the Salt Lake County Jail not to exceed six months, or both.

It is conceded that the purpose of the enactment was to prevent the sale of sexual favors and prostitution in establishments holding themselves out to the public as massage parlors. The prohibitions contained in the ordinance are in the estimation of the Commission, the only effective way to deal with the problem in that particular setting.

Plaintiffs, an aggregate of unincorporated business entities operating as massage establishments in Salt Lake County, filed a complaint with the trial court on December 5, 1978, seeking (1) a declaration that the various provisions contained in the ordinance violated the laws and Constitution of the State of Utah and of the United States,

and (2) a permanent injunction against the enforcement of such sections. The plaintiffs also filed a motion for a temporary restraining order, which order was summarily granted. On December 14, 1978, pursuant to a stipulation of the parties, the trial court left the temporary restraining order in full force and effect as to Sections 15–18–5(1) and 15–18–5(2) of the ordinance in question, but lifted it with regard to all other provisions of that ordinance. The parties thereafter agreed to stipulate to the facts in the matter and submit the question to the trial court on cross-motions for summary judgment. A stipulation was submitted to the court on March 7, 1979, indicating that the plaintiffs were duly licensed businesses in Salt Lake County, that licensed masseurs in the County numbered approximately 140 (of whom approximately 130 are women), and that the vast majority of massage parlor patrons are men. The stipulation further stated that if the ordinance were enforced, it would cause financial hardship on the owners and employees of massage parlors within the County.

Following hearing held on August 27, 1979, the trial court denied plaintiffs' motion for summary judgment and granted defendants' motion dismissing plaintiffs' complaint. The decision set aside the restraining order effective December 19, 1979. Plaintiffs thereupon filed notice of this appeal, together with a motion seeking restoration of the restraining order pending the outcome thereof. The latter motion was granted by this Court as it related to Section 15–18–5(1) of the ordinance.

Plaintiffs first assert that the Salt Lake County Commission acted in excess of legislatively-delegated powers in enacting the subject ordinance. Several arguments are advanced to suggest that the enacted provisions extend beyond the powers delegated to counties within the State of Utah by statute.

The Utah code[1] provides that counties . . . may license for purpose of regulation and revenue all and every kind of business not prohibited by law . . .; they may fix the rates of license tax upon the same, and provide for the collection thereof by suit or otherwise; they may license, tax, regulate, suppress and prohibit billiard, bagatelle, pigeonhole, or any other tables or implements kept or used for similar purposes . . . . The board of county commissioners may pass all ordinances and rules and make all regulations not repugnant to law necessary for carrying into effect all powers and duties conferred by this section, and to enforce obedience to such ordinances with such fines and imprisonments as the board may deem proper; provided, that the punishment for any offense shall be by fine in any sum less than $300 or by imprisonment not to exceed six months, or by both such fine and imprisonment.

Plaintiffs first point out that the foregoing statutory provision, while enabling a county commission to license every legal form of business for purposes of regulation and revenue, does not permit the suppression and prohibition of business establishments save those enumerated within the body of the statute itself. Since, according to plaintiffs, Section 15–18–5(1) of the enacted ordinance effectively suppresses and prohibits the conducting of a massage parlor business, it is in violation of the Enabling Act.

Plaintiffs' assertion that the ordinance in question regulates massage parlors to the point of suppression or prohibition, while relying on a different legal provision, is not dissimilar to arguments which have been raised in other cases asserting that diverse business regulations were so severe as to amount to deprivation of property without due process. The general rule applied in the face of such claims is that the power to regulate for the general welfare, inherent in the police power of the State (and delegated by legislative enactment to cities and counties), does not constitute an abridgment of the due process rights of proprietors of business establishments provided it is applied in a necessary and proper

1. U.C.A., 1953, 17–5–27.

fashion.[2] A like rule might well be applied in the instant case. A business entity operating within a county is subject to the powers of regulation afforded the county commission by statute. Such regulations as are necessary and proper to the protection of the welfare, morals, health, and well-being of the public[3] shall not constitute suppression or prohibition for purposes of the above provision.

Plaintiffs argue, however, that the subject ordinance provisions are neither necessary nor proper measures for the alleviation of the problems sought to be eliminated by the Commission. This argument has reference to a separate provision of Utah law[4] which states:

> The board of county commissioners may pass all ordinances and rules and make all regulations, not repugnant to law, necessary for carrying into effect or discharging the powers and duties conferred by this title, and such as are necessary and proper to provide for the safety, and preserve the health, promote the prosperity, improve the morals, peace and good order, comfort and convenience of the county and inhabitants thereof, and for the protection of property therein
>
> . . . .

Plaintiffs first assert that the provision of the enactment forbidding the administration of massages to members of the opposite sex is an unnecessary regulation of Salt Lake County's massage parlor business establishments. The purpose of the provision being the curtailment of prostitution, argue plaintiffs, it is rendered superfluous by an extensive body of state law prohibiting the practice of prostitution, and providing penalty therefor.

■ It is not the function of this Court to evaluate the wisdom or practical necessity

of legislative enactments. The form of the challenged provision, when read in conjunction with the minutes of the public meeting held prior to its enactment, clearly evidenced a concern on the part of the Commission that the state statutory framework, unsupplemented by local ordinances, presented insurmountable enforcement problems in the case of massage parlors. We will not presume to second-guess the soundness of that decision.

Plaintiffs likewise assert that the provision prohibiting the massage of members of the opposite sex is not a proper exercise of the police power delegated by statute.

■ Local units of government have no inherent police power, and may exercise such power only to the extent that (1) it is expressly conferred by the state legislature; (2) it may be fairly implied from powers expressly granted; or (3) it is essential to the fundamental declared objects of local government.[5] Ordinances passed pursuant to such power, absent a showing to the contrary, enjoy a presumption of validity.[6]

■ In the instant case, the County has been given express power to make rules and regulations, not repugnant to law, necessary and proper to improve the morals, preserve the health, peace and good order among its citizenry. The practice of prostitution within the County has presented a clear threat to the attainment of those goals, and its prevention in the seclusion of a seemingly legitimate massage parlor has proven sufficiently difficult that an ordinance of the sort here in question must be regarded as having been enacted pursuant to power fairly implied from the express provision of state law.

■ Plaintiff relies on our decision in *Jensen v. Salt Lake County Board of Com-*

---

2. *Shaw v. Orem City*, 117 Utah 288, 214 P.2d 888 (1950); *Magleby v. State, Department of Business Regulations*, Utah, 564 P.2d 1109 (1977); *Murrill v. State Board of Accountancy*, 97 Cal.App.2d 709, 218 P.2d 569 (1950).

3. See U.C.A., 1953, 17–5–77.

4. Id.

5. *State v. Hutchinson*, Utah, 624 P.2d 1116 ( no. 16087, filed December 9, 1980); *Salt Lake City v. Kusse*, 97 Utah 113, 93 P.2d 671 (1938); *Salt Lake City v. Revene*, 101 Utah 504, 124 P.2d 537 (1942).

6. *Salt Lake City v. Savage*, Utah, 541 P.2d 1035 (1975).

*missioners*[7] for the proposition that the instant ordinance provision is an improper exercise of the police power in that it attempts to deal with the problem of prostitution indirectly rather than directly. The cited case dealt with an ordinance passed by the defendant Commission seeking to regulate the qualifications required for the licensing of masseurs within Salt Lake County. This Court struck down the ordinance provision as being unconstitutionally vague. We then pointed out that:

> The regulation of physical therapists is under the jurisdiction of the Department of Business Regulations of the State of Utah pursuant to the provisions of [U.C.A., 1953] Section 58-1-5(12) and would not be subject to regulation by the County.[8]

As the proposed ordinance attempted to regulate in an area expressly committed by state law to another agency, it was adjudged an improper exercise of the police power. The instant case presents no such question. The power to permit or prohibit massages by members of the opposite sex has not been expressly committed by statute to any existing agency of government. As such, the provision does not constitute a jurisdictional infringement, and is not improper on that basis.

Plaintiffs argue, however, that any attempt by a county to regulate in the interest of combatting prostitution is improper, in that state law has preempted the field. It is argued that, by prohibiting the massage of a member of the opposite sex, and imposing civil and criminal penalties on the violation of such prohibition, the defendant Commission has created a new crime, nonexistent under the comprehensive prostitution laws of Utah, and should therefore be declared invalid. In this regard, we are urged to accept the rationale of *Lancaster v. Municipal Court for Beverly Hills.*[9]

■■■ This Court has previously ruled that local governments may legislate by ordinance in areas previously dealt with by state legislation, provided the ordinance in no way conflicts with existing state law (i. e., permitting that expressly prohibited by statute, or forbidding that expressly permitted by statute).[10] In the case of *Salt Lake City v. Allred,*[11] this Court stated that a local governmental body is at liberty to legislate for the prevention of prostitution and other sexual offenses, notwithstanding state legislation in the same area, so long as both statutory and ordinance law have a common purpose, and are not in conflict. Moreover, such conflict is not created by the fact that an ordinance denounces as unlawful an act upon which state law is silent, or pronounces a penalty therefor.

■ The decision of *Allgood v. Larson,*[12] also relied upon by plaintiffs, is not in conflict with this principle. In that case, a city ordinance attempted to prohibit trespass, and to establish a penalty therefor of fine or imprisonment. Utah's criminal code[13] labeled trespass an infraction[14] and prescribed a lesser penalty.[15] Moreover, the criminal code was declared the exclusive governing body of law with regard to the offenses set forth therein, and punishments to be attached thereto.[16] Hence, by attempting to regulate in an area made the exclusive domain of state criminal law, and by attempting to vary the prescribed punishment, the city ordinance was in conflict with state law, and invalid. No such conflict exists in the present case.

7. Utah, 530 P.2d 3 (1974).

8. Id., at page 4.

9. 6 Cal.3d 805, 100 Cal.Rptr. 609, 494 P.2d 681 (1972).

10. *Salt Lake City v. Howe,* 37 Utah 170, 106 P. 705 (1910); *Salt Lake City v. Kusse,* supra, footnote 5.

11. 20 Utah 2d 298, 437 P.2d 434 (1968).

12. Utah, 545 P.2d 530 (1976).

13. U.C.A., 1953, 76-1-101, et seq.

14. U.C.A., 1953, 76-3-102.

15. U.C.A., 1953, 76-3-205.

16. U.C.A., 1953, 76-1-103(1).

■ Plaintiffs suggest another source of conflict, however, in the fact that the massage provision penalizes a parlor proprietor for causing or *permitting* an employee to massage a member of the opposite sex. Plaintiffs claim that by criminalizing the act of passively permitting opposite-sex massages, the ordinance is contrary to the purpose and intent of our statute defining criminal conspiracy.[17]

Assuming, for the moment, that both provisions were governed by the same set of laws, nevertheless, there can be no conflict of application. This is so because the section relied upon by the plaintiffs commences with the phrase, "For purposes of this part ..." The contested provision of the county ordinance therefore does not lie within the Utah Criminal Code by reason of the latter's own wording. Consequently, prosecutions under the County ordinance are not governed by state criminal conspiracy principles.

On the basis of the foregoing, we hold that the opposite-sex massage provision is not invalid by reason of preemption by state law.[18]

In addition to their contention that the opposite-sex massage provision of the subject ordinance was enacted in excess of the powers delegated by enabling legislation, plaintiffs assert that its enforcement would necessarily place them at odds with other provisions of state law. Specifically mentioned are Utah's Anti-discrimination Act[19] and civil rights legislation.[20]

■ The anti-discrimination provision referred to states that:

It shall be a discriminatory or unfair employment practice ... [f]or an employer to refuse to hire, to discharge, to promote, demote, or terminate, or to discriminate in matters of compensation against any person otherwise qualified, because of race, color, sex, age, if the individual is 40 years of age or older, religion, ancestry, national origin, or handicap.[21]

For purposes of this provision, the term "employer" is specially defined:

"Employer" means the state or any political subdivision or board, commission, department, institution or school district thereof, and every other person employing 25 or more employees within the state; ...[22]

This Court does not engage in the rendering of advisory opinions.[23] absent some overriding consideration of public policy, a party must demonstrate standing to raise an issue in order to secure a ruling thereon.[24]

In the instant case, plaintiffs have not shown, by stipulation, affidavit, or otherwise, that any one of the massage parlors seeking declaratory relief below employed 25 or more individuals. Therefore, plaintiffs have failed to demonstrate standing to challenge the application of the Anti-discrimination Act, as it does not appear that any of their number is an "employer" for purposes of the statute.

■ As mentioned above, plaintiffs also rely on that portion of Utah's civil rights legislation which states that:

17. U.C.A., 1953, 76–4–201 provides as follows:
 For purposes of this part a person is guilty of conspiracy when he, intending that conduct constituting a crime be performed, agrees with one or more persons to engage in or cause the performance of such conduct and any one of them commits an overt act in pursuance of the conspiracy, except where the offense is a capital offense, a felony against the person, arson, burglary, or robbery, the overt act is not required for the commission of conspiracy.

18. We so hold in awareness of the decision of *Layton City v. Speth*, Utah, 578 P.2d 828 (1978).

19. U.C.A., 1953, 34–35–6(1)(a).

20. U.C.A., 1953, 13–7–1, et seq.

21. See footnote 19, supra.

22. U.C.A., 1953, 34–35–2(5).

23. *Koer v. Mayfair Markets*, 19 Utah 2d 339, 431 P.2d 566 (1967); *Baird v. State*, Utah, 574 P.2d 713 (1978); *Hoyle v. Monson*, Utah, 606 P.2d 240 (1980).

24. *Jenkins v. State*, Utah, 585 P.2d 442 (1978); *Hoyle v. Monson*, supra, footnote 23.

All persons within the jurisdiction of this state are free and equal and are entitled to full and equal accommodations, advantages, facilities, privileges, goods and services in all business establishments and in all places of public accommodation, and by all enterprises regulated by the state of every kind whatsoever, without discrimination on the basis of race, color, sex, religion, ancestry or national origin.[25]

Plaintiffs reason that application of the opposite-sex massage provision, in light of the present makeup of the massage trade in Salt Lake County, will constrain massage parlors to turn away male customers, in violation of the foregoing statutory provision.

The assertion is without merit. Nothing in the challenged ordinance provisions requires a massage parlor to refuse service to a customer based on his or her gender. All individuals, male or female, are entitled to the services of a licensed masseur, provided the masseur is not a member of the opposite sex. If there exists in the county at present a dearth of licensed male masseurs, and an overabundance of male massage parlor patrons, such cannot be characterized a defect in the ordinance in question. The statute invoked by plaintiffs cannot be so read as to entitle a member of the public to a massage by a member of the opposite sex.

Plaintiffs next challenge the opposite-sex massage provision on the basis of guarantees of equal protection of the law afforded under the Constitutions of the United States[26] and of the State of Utah.[27] They argue that the prohibition of massaging a member of the opposite sex creates an arbitrary and unreasonable classification in violation of such constitutional guarantees.

It has been established to a certainty, as plaintiffs concede, that an ordinance such as the one in question here does no violence to federal guarantees of equal protection.[28] We regard the rulings of the U.S. Supreme Court in this area dispositive of the present question, and decline to entertain plaintiffs' challenge based on the U.S. Constitution.

Plaintiffs urge us, however, to apply a more rigid standard with regard to Utah's equal protection provision. This we likewise decline to do, and hold that the challenged provision complies with requirements of equal protection.

Where a legislative enactment creates no inherently suspect classification and touches upon no fundamental interest as recognized by the Constitution, it satisfies the exigencies of equal protection if the classification made thereby has a rational basis in a legitimate legislative objective.[29] The opposite-sex massage provision clearly meets such a standard. The prevention of acts of prostitution is among the oldest and most venerable functions of the police power. The difficulty of enforcing such prohibitions in a massage parlor, where all acts of wrongdoing may be confined to a private and isolated location, clearly indicates the sort of blanket prohibition prescribed by the subject enactment. Moreover, application of the ordinance provision has been carefully circumscribed to permit opposite-sex massages which relate to medical treatment or health care, such as might occur in a doctor's office, hospital, rest home, etc. We cannot agree that the ordinance provision lacks a rational basis in a legitimate legislative objective.

Plaintiffs urge us, however, to regard the opposite-sex massage provision as touching both upon a fundamental interest

25. U.C.A., 1953, 13–7–3, as amended.

26. Constitution of the United States, Amendment XIV.

27. Constitution of the State of Utah, Article I, Section 2.

28. *Smith v. Keator*, 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636 (1974); *Rubenstein v. Township of Cherry Hill*, 417 U.S. 963, 94 S.Ct. 3165, 41

L.Ed.2d 1136 (1974); *Kisley v. City of Falls Church*, 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed.2d 169 (1972).

29. *Continental Bank & Trust Co. v. Farmington City*, Utah, 599 P.2d 1242 (1979); *State Tax Commission v. Dept. of Finance*, Utah, 576 P.2d 1297 (1978).

and a suspect classification. We feel such contentions to be without merit.

■ Plaintiffs suggest that the ordinance provision creates a classification based on sex, which is or should be inherently suspect under Utah law. Without ruling upon the latter portion of this contention, we observe that no sex classification is created. Not all legal provisions which take gender into consideration create such sex-based classifications. The terms of the opposite-sex massage provision do not place either sex at an inherent legal disadvantage vis-a-vis the other. Men and women are afforded an equal right to practice as licensed masseurs, or to patronize massage parlors. Only the massage of a member of one sex by a member of the other sex is forbidden. It is true that the makeup of the clientele may, as a practical matter, determine the gender of massage parlor employees, and vice versa. Such distinctions, however, are not creatures of law, and their existence does not offend equal protection.

■ We likewise reject plaintiffs' assertion that the conduct of a massage parlor business, or any other trade or occupation, constitutes such a fundamental interest that state legislation may not create classifications touching thereon absent a compelling state interest. Were we to accept such an assertion, all laws relating to commerce, trade, occupational requirements, etc., would be subject to reevaluation and a probable invalidation. The right to pursue a trade or occupation is indeed basic in our society, but does not constitute such a fundamental interest that it is immune from reasonable legal restrictions and classifications.

■ Plaintiffs issue a further constitutional challenge to the opposite-sex massage provision in the form of a charge that it constitutes a bill of attainder in violation of guarantees afforded by the Constitution

of the State of Utah.[30] The claim is based on this Court's decision in the case of *Hart Health Studio v. Salt Lake County*.[31] That case dealt with a licensing fee of $5,000 imposed upon the proprietor of any massage parlor employing masseurs who had, during the preceding 12 months, worked at any massage parlor the license of which had been revoked. The ordinance was invalidated as bearing no rational relationship to any recognizable, legitimate state objective. The Court then stated:

> We also believe this section of the ordinance is somewhat like the old bills of pains and penalties (special acts of a legislature which inflict punishment on persons without any conviction by the ordinary course of judicial proceedings), prohibited by the Utah and U.S. Constitutions. [Citation omitted.][32]

A bill of attainder is one which imposes guilt, and inflicts punishment, upon an identifiable individual or group without judicial process.[33] The enactment here under consideration bears none of these characteristics. It is directed at all individuals within Salt Lake County who operate, or are employees at, a massage parlor. Unlike the ordinance considered in the *Hart* decision, the instant provision does not impose an automatic legislative penalty, but merely prohibits a certain act, and provides civil and criminal remedies for a violation thereof. No identifiable individual or group is, by operation of the ordinance alone, the subject of legislative punishment without due process.

Plaintiffs' remaining contentions deal with other sections of the enacted ordinance. Prior to their examination, we are compelled to make certain preliminary observations regarding the propriety of their presentation to this Court at the present time.

---

**30.** Article I, Section 18, Constitution of the State of Utah.

**31.** Utah, 577 P.2d 116 (1978).

**32.** Id., at page 118.

**33.** *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977).

 It has been previously observed that this Court does not render advisory opinions.[34] One application of this principle is the doctrine of ripeness for adjudication. In order to constitute a justiciable controversy, a conflict over the application of a legal provision must have sharpened into an actual or imminent clash of legal rights and obligations between the parties thereto. Where there exists no more than a difference of opinion regarding the hypothetical application of a piece of legislation to a situation in which the parties might, at some future time, find themselves, the question is unripe for adjudication.[35]

 As was observed at the outset of this opinion, the ordinance here under consideration was subjected to a temporary restraining order on December 5, 1978, one day before its effective date. On December 14, 1978, the restraining order was lifted as to all sections of the ordinance save that prohibiting massage of members of the opposite sex, and that prohibiting the serving, storing, or consumption of alcoholic beverages on the premises of a massage parlor. As a result, the provisions which remain subject to the restraining order have never been subject to enforcement. With regard to the remaining provisions, this Court has been given no indication that any of the plaintiffs, or any other massage establishment located in Salt Lake County, has been subjected to charges of wrongdoing thereunder. Moreover, with the single exception of a stipulation that the vast majority of licensed masseurs in Salt Lake County are women, while a large majority of massage parlor patrons in that county are men, there is no indication offered that any of the plaintiffs are at present in violation of any of the provisions of the enacted ordinance, or that they contemplate violating such provisions in the near future. In short, the "controversy" which the parties lay before this Court, with the exception of that surrounding the opposite-sex massage provision, is nothing more than an academic debate regarding possible infringements on the legal rights of an unidentified business entity in the event that, at some future time, the provisions of the ordinance were applied under a set of hypothetical circumstances. This being the case, we deem it unwise to render an opinion in the matter at present.

Thus, there having been no indication that any of the plaintiffs stand in actual or potential violation of the ordinances, we decline to rule upon the following: the minimum age requirement, sanitation requirements, the prohibition against the service or consumption of alcoholic beverages on the premises and the assertion that the definitions of the terms "masseur" and "employee" in the ordinance are void for vagueness. That any or all of these questions may arise at some future time, when, in the course of law enforcement, the subject provisions are brought to bear upon identifiable individuals under actual circumstances, we do not doubt. It is at such time, however, and not at present, that they may be properly adjudicated.

The decision of the trial court is hereby affirmed.

STEWART and J. ALLEN CROCKETT,* JJ. and DEAN E. CONDER, District Judge, concur.

MAUGHAN, C. J., does not participate herein.

CONDER, District Judge, sat.

WILKINS, J., heard the arguments but resigned before the opinion was filed.

---

34. Footnote 23, supra.

35. See generally, 2 Antieau, Modern Constitutional Law, Section 15:18, p. 648; 16 Am. Jur.2d, Constitutional Law, Section 163, p. 547.

\* CROCKETT, J., concurred in this case prior to his retirement.