Clarence I. JUSTHEIM and Justheim
Petroleum Company, a corporation,
Plaintiffs and Appellants,

v.

DIVISION OF STATE LANDS OF the
UTAH STATE DEPARTMENT OF
NATURAL RESOURCES, Defendant
and Respondent,

and

PHILLIPS PETROLEUM COMPANY, a
Delaware corporation, Sunoco Energy
Development Co., a Delaware corpora-
tion, and Sohio Natural Resources Com-
pany, a Delaware corporation, Defend-
ants-in-Intervention, Counterclaimants,
Cross-Claimants and Respondents,

v.

Clarence I. JUSTHEIM and Justheim Pe-
troleum Company, a corporation, and
the Division of State Lands of the State
Department of Natural Resources,
Counterclaim and Crossclaim Defend-
ants and Appellants,

and

GULF OIL CORPORATION, a Pennsylva-
nia corporation, and Frederick H. Lar-
son, an individual, Defendants-in-Inter-
vention, Counterclaimants and Respon-
dents,

v.

Clarence I. JUSTHEIM and Justheim Pe-
troleum Company, a corporation, Coun-
terclaim Defendants and Appellants.

No. 18005.

Supreme Court of Utah.

March 3, 1983.

Frank J. Allen, Salt Lake City, for plain-
tiffs and appellants.

David L. Wilkinson, Atty. Gen., Dallin W.
Jensen, Asst. Atty. Gen., Michael M. Quea-
ly, Mitchell Melich, Kent Murdock, Robert
G. Pruitt, Jr., Lawrence S. Skiffington, Salt
Lake City, Kent R. Olson, Denver, Colo., for
defendant and respondent.

HOWE, Justice:

Plaintiffs (Justheim) appeal from a summary judgment in favor of defendant Division of State Lands of the Utah State Department of Natural Resources dismissing their complaint with prejudice and on the merits.

Under the Utah Enabling Act of 1894, 28 Stat. 109, Section 6, the United States Congress granted Utah, upon admission to the Union, Sections 2, 16, 32 and 36 of every township for the support of its common schools. That outright grant was qualified by a provision allowing the State equivalent indemnity lands for those sections or partial sections of original school land grants sold or otherwise disposed of by or under the authority of any act of Congress. Selection by the State of indemnity lands was made subject to the approval of the Secretary of the Interior.

In 1934 Congress passed the Taylor Grazing Act, presently codified at 43 U.S.C. § 315, which authorized the Secretary of Interior to place 80 million acres of unappropriated federal lands within grazing districts to protect over-grazing and soil deterioration. That same year, by Executive Order No. 6910, President Roosevelt withdrew all unappropriated and unreserved lands from twelve western states, including Utah, as the Taylor Grazing Act had affected no more than half of the federal lands believed to be in need of protection. Together, the Act and Executive Order effectively removed all public lands in those twelve states from all forms of entry or settlement. By congressional amendments, acreage subject to removal was initially increased to 142 million acres in 1936, 49 Stat. 1976, and acreage limitation was entirely abolished by amendment in 1954, 68 Stat. 151. The 1936 amendment added § 7 to the Taylor Grazing Act, 43 U.S.C. § 315f, under which

> [t]he Secretary of the Interior is hereby authorized, in his discretion, to examine and classify any lands withdrawn or reserved by Executive order ... or within a grazing district, which are more valuable or suitable for the production of agri-cultural crops than for the production of native grasses and forage plants, or more valuable or suitable for any other use than for the use provided for under this chapter, *or proper for acquisition in satisfaction of any outstanding lien, exchange or script* [sic] right, *or land grant,* and to open such lands to entry, selection or location for disposal in accordance with such classification under applicable public-land laws, ...

> \*  \*  \*  \*  \*  \*

> Such lands shall not be subject to disposition, settlement, or occupation until after the same have been classified and opened to entry ... [Italics added.]

Between 1965 and 1971 the State of Utah made application for indemnity lands by filing school land selections on 157,255.90 acres of federal lands containing oil shale deposits located in Uintah County, Utah. The Secretary of the Interior rejected the State's application as the lands in question had not been classified as available indemnity lands. Some of those selected lands were subject to placer mining claims filed by Defendants-in-Intervention Gulf Oil Corporation and Frederick H. Larson (Gulf/Larson). For the purpose of this appeal it is sufficient to note that in 1970 the State of Utah and Gulf/Larson reached an agreement by which Gulf/Larson obtained the right to oil shale leases from the State at such time as the Secretary of the Interior would issue a clear list or classify the selected lands as subject to disposal.

In June of 1974 Justheim applied to the State for oil shale leases on some of the same lands claimed by Gulf/Larson. The State rejected Justheim's lease applications on the ground that the State did not have legal title to permit the issuance of leases. Justheim filed its complaint in the court below asking for a declaration that it was the first qualified applicant pursuant to U.C.A., 1953, § 65–1–45(1).

In March of 1975 all proceedings on Justheim's complaint were stayed pending the outcome of an indemnity land selection case then pending in the federal courts,

with the State of Utah as plaintiff and the Secretary of the Interior as defendant. *Andrus v. Utah,* 446 U.S. 500, 100 S.Ct. 1803, 64 L.Ed.2d 458, reh. den. 448 U.S. 907, 100 S.Ct. 3051, 65 L.Ed.2d 1137 (1980) was decided on May 19, 1980 and held, in a nutshell, that the Secretary of the Interior's policy of not approving the State's indemnity land selections involving "gross disparate value" was within his discretionary authority to classify lands under the Taylor Grazing Act. The State then filed its motion for summary judgment in the instant case and the court below granted that motion on the following grounds:

> Since the Secretary of the Interior has not yet classified any of the subject land suitable for such school indemnity acquisition, the State of Utah has not yet acquired any property interest by virtue of the pending school indemnity selection applications, and the State of Utah thus does not have any interest or title sufficient to permit it to issue state leases on the lands covered by the selection applications.

■ The sole issue on this appeal is whether the State of Utah obtained sufficient title to selected indemnity lands upon application to the Secretary of the Interior to enable it to issue oil shale leases. Whether or not Justheim is the first qualified applicant as it claims, or whether it would be subject to competitive bidding pursuant to § 65–1–45(2) as Gulf/Larson would have, is an issue not before this Court. In view of our holding that question is not ripe for adjudication and must await the determination of the Secretary of the Interior whether the State of Utah will ever be entitled to those lands. It is not our function to render advisory opinions. *Redwood Gym v. Salt Lake City Com'n.,* Utah, 624 P.2d 1138, 1148 (1981).

The Utah Enabling Act of 1894, supra, does not expressly state at what point title passes to the State in the original lands granted for common school purposes, although the language of grant is in praesenti. Under stare decisis title to the original school lands does not vest until completion of an official survey. *Andrus v. Utah,* supra, 446 U.S. at 507, 100 S.Ct. at 1807. *United States v. Wyoming,* 331 U.S. 440, 443, 67 S.Ct. 1319, 1321, 91 L.Ed. 1590 (1947). *Wyoming v. United States,* 255 U.S. 489, 41 S.Ct. 393, 65 L.Ed. 742 (1921). "If upon survey it is found that the federal government has made a previous disposition of the section, the State *is then entitled* to select lieu lands as indemnity in accordance with provisions incorporated into each of the school land grants." *United States v. Wyoming,* supra, 331 U.S. at 443, 67 S.Ct. at 1321. [Emphasis added.]

The question of when a state is entitled to indemnity lands was decided in *Andrus,* supra, *United States v. Wyoming,* supra, *Wyoming v. United States,* supra, and *Payne v. New Mexico,* 255 U.S. 367, 41 S.Ct. 333, 65 L.Ed. 680 (1921) which held that a state's title to indemnity lands could not be defeated if that state had submitted its selection list *before* the land selected by it was withdrawn or appropriated by the federal government. Those cases are inapplicable here because the State submitted its selection list *after* the chosen indemnity lands had been withdrawn from entry or selection. *Andrus,* supra, holds that under § 7 of the Taylor Grazing Act the Secretary of the Interior has "the authority in his discretion to classify lands within a federal grazing district as proper for school indemnity selection." *Id.* 446 at 520, 100 S.Ct. at 1814, 64 L.Ed.2d at 472. The Secretary found that the indemnity lands chosen by the State of Utah were grossly disparate in value to the original school lands granted to the State and refused to classify them for selection. Such finding, the Supreme Court of the United States held, was not "an abuse of the broad discretion thus conferred. On the contrary, that policy is wholly faithful to Congress' consistent purpose in providing for indemnity selections, to give the states a rough equivalent of the school land grants in place that were lost through preemption or private entry prior to survey." *Id.* at 520, 100 S.Ct. at 1814.

■ In light of the holding of *Andrus,* supra, we conclude that the trial court had

no alternative but to grant the motion for summary judgment on the grounds stated. When Congress enacted the Taylor Grazing Act and amendments, it became the law of the land. When the Supreme Court of the United States held that there was no abuse of discretionary power when the Secretary of the Interior refused to classify the lands at issue here, § 7 of the Taylor Grazing Act was upheld as valid, and our courts are bound.

Judgment affirmed. No costs awarded.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.