**JANE L., et al., Plaintiffs,**

v.

**Norman BANGERTER, et al., Defendants.**

**Civ. No. 91–C–345G.**

United States District Court, D. Utah, C.D.

May 22, 1992.

Janet Benshoof, Eve Gartner, Rachel Pine, New York City, Jeffrey Oritt, Howard Lundgren, Salt Lake City, Utah, and Simon Heller, Washington, D.C., for plaintiffs.

Mary Anne Wood, Anthony Quinn, James Soper, Paul Durham and Kay Balmforth, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER IN RE PLAINTIFFS' MOTION TO VOLUNTARILY DISMISS CLAIMS ARISING UNDER THE UTAH CONSTITUTION

J. THOMAS GREENE, District Judge.

This matter came regularly before the court on April 10, 1992, on plaintiffs' Motion to Voluntarily Dismiss Claims Arising Under the Utah Constitution. Janet Benshoof, Eve Gartner, Rachel Pine, Jeffrey Oritt, Howard Lundgren, Dominique Bravo and Simon Heller appeared for plaintiffs, and Mary Anne Wood, Anthony Quinn, James Soper, Paul Durham, Richard Wilkins and Katherine Balmforth appeared for defendants. Extensive oral argument was heard, after which the court took the matter under advisement. Now being fully advised, this court enters its memorandum decision and order.

Plaintiffs' Amended Complaint, filed on May 15, 1991, alleged numerous violations of the Federal Constitution along with alleged violations of various sections of the Utah Constitution. After extensive discovery, and well after the discovery cut-off date, while all eight claims of the Amended Complaint were before the court on motions for summary judgment and dismissal, plaintiffs requested that defendants stipulate to the dismissal of state constitutional claims without prejudice. Defendants were willing to stipulate to dismissal, but not without prejudice, and on February 14, 1992, plaintiffs filed the instant motion.

I. *Waiver of Eleventh Amendment Immunity by the State*

A state's consent to suit in federal court must be "unequivocally expressed." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). In this regard, the Supreme Court has said, "we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)).

Plaintiffs contend that this court does not have jurisdiction to grant injunctive relief in this case against state officials on the basis of state law because there has been no valid waiver of Eleventh Amendment immunity. In this connection, plaintiffs submit that the Attorney General and the Governor do not have the power to waive the state's immunity, and the Utah legislature has not explicitly done so. Defendants maintain that a valid waiver has

occurred by reason of actions by the executive as well as the legislature.

Plaintiffs cite *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945) for the proposition that the Attorney General can consent to suit in federal court on behalf of the State only pursuant to a specific legislative grant of authority. However, *Ford Motor* applies to instances in which the Attorney General does not have common law powers under a state's constitution or statutes. 323 U.S. at 469, 65 S.Ct. at 353. In contrast, the Attorney General's powers in the State of Utah are "as broad as the common law unless restricted or modified by statute." *Hansen v. Barlow*, 23 Utah 2d 47, 456 P.2d 177, 178 (1969). The Governor of Utah also possesses common law powers as was clarified in an amendment to the Utah Constitution in 1979 which supplemented the enumerated powers of the Governor, vesting in him "[t]he executive power of the State." Utah Const. Art. VII, § 5. Given the broad common law powers of the Attorney General and the Governor of Utah, it is apparent that the executive as well as the legislative branch may waive Eleventh Amendment immunity in the State of Utah. In this regard, this court follows the reasoning of the Third Circuit in *Skehan v. Board of Trustees of Bloomsburg, Etc.*, 669 F.2d 142, 148 (1982), in which the court said,

> [W]e agree with appellees that strong policy considerations support a conclusion that the question of waiver of Eleventh Amendment immunity would ordinarily be a decision for the *legislature or executive* rather than for the judiciary. The *legislative and executive* branches have the information needed to evaluate the ability of the state treasury to bear the potential monetary burden that may result from consent to suit in federal court. (emphasis added)

■ In the case at bar, the Governor and the Attorney General have both had an opportunity to evaluate the potential pros and cons of defending this lawsuit in federal court, and both have decided that it is in the State's best interests to waive Eleventh Amendment immunity.

In addition to the express consent of the executive branch of the Utah government, the Utah legislature has specifically appropriated funds for the defense of this lawsuit in federal court while being on notice that state as well as federal constitutional violations are alleged. *See* S.B. 214 (1992); H.B. 471 (1991); S.B. 210 (1991). This court considers that these instances of appropriation of funds for the maintenance of this federal suit is sufficient "overwhelming implication" that the legislature intended to waive state Eleventh Amendment immunity. *See Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360.

■ It appears to this court that the State of Utah has expressly and voluntarily waived its right to Eleventh Amendment immunity. However, even if a valid waiver has not been effected, dismissal of the Utah Constitutional claims would still not be mandated in the absence of such a request from the State. As the Supreme Court has stated, "[W]e have never held that [the Eleventh Amendment] is jurisdictional in the sense that it must be raised and decided by this Court on its own motion." *Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 2567 n. 19, 73 L.Ed.2d 172 (1982). This court has not raised the question of Eleventh Amendment immunity *sua sponte*, and the State of Utah has not requested dismissal of the Utah Constitutional claims. To the contrary, the State of Utah opposes dismissal of such claims without prejudice as is urged by plaintiffs. Accordingly, this court retains jurisdiction of claims based upon the Utah Constitution, and now proceeds to address these claims on the merits.[1]

## II. *Utah Constitutional Claims*

Most of the claims asserted by plaintiffs under the Utah Constitution implicate pro-

---

1. Plaintiffs' Second, Third and Eighth Causes of Action (concerning privacy, liberty and spousal notification issues) have been taken under advisement, so the Utah constitutional issues raised therein as well as the federal claims will not be discussed in this memorandum.

visions which are identical or substantially similar to provisions under the United States Constitution. In the few cases in which the Utah provisions are discussed by the Utah Supreme Court, federal case law has been cited and largely relied upon. Accordingly, the analysis and interpretation can be expected to be the same or substantially the same under both constitutions. In this regard, where applicable, this court's contemporaneously issued Memorandum Decision and Order In Re: Defendants' Motion to Dismiss and Certain Issues in Defendants' Motion For Summary Judgment is referred to and incorporated herein.

### A. Vagueness

■ Plaintiffs alleged in their First Cause of Action that the Utah Abortion Act fails to give adequate notice of the precise nature of prohibited conduct, and is therefore void for vagueness in violation of Sections 1, 2, 3, 7, 25, and 27 of the Utah Constitution.[2] Specifically, plaintiffs claim that there are no commonly accepted meanings for the terms: "necessary to save the mother's life," "grave damage to the woman's medical health," and "grave defects."

Utah Code Ann. § 76–7–302(2)(a), (d), (e) (Supp.1991).[3]

Utah courts consistently have analyzed vagueness challenges by reference to federal constitutional case law.[4] Typically, litigants do not argue for a different analysis under the Utah Constitution. *State v. Archambeau*, 820 P.2d 920, 927 n. 13 (Utah App.1991). *See State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988) ("As a general rule, we will not engage in state constitutional analysis unless an argument for different analysis under the state and federal constitutions is briefed.") (*petition for cert. filed*, 60 U.S.L.W. 3656 (U.S. March 9, 1992) (No. 91–1442); *State of Utah v. Bobo*, 803 P.2d 1268, 1272 (Utah App.1990) ("Until such time as attorneys heed the call of the appellate courts of this state to more fully brief and argue the applicability of the state constitution ... we cannot meaningfully play our part in the judicial laboratory of autonomous state constitutional law development.")

In *Greenwood v. City of North Salt Lake*, 817 P.2d 816 (Utah 1991) the Utah Supreme Court rejected a vagueness challenge using essentially the same analysis as this court employed with regard to

---

**2.** Article I, Section 1 of the Utah Constitution provides:

All men have the inherent and inalienable right to enjoy and defend their lives and liberties; to acquire, possess and protect property; to worship according to the dictates of their consciences; to assemble peaceably, protest against wrongs, and petition for redress of grievances; to communicate freely their thoughts and opinions, being responsible for the abuse of that right.
Article I, Section 2 provides:
All political power in inherent in the people; and all free governments are founded on their authority for their equal protection an benefit, and they have the right to alter or reform their government as the public welfare may require.
Article I, Section 3 provides:
The State of Utah is an inseparable part of the Federal Union and the Constitution of the United States is the supreme law of the land.
Article I, Section 7 provides:
No person shall be deprived of life, liberty or property, without due process of law.
Article I, Section 25 provides:
This enumeration of rights shall not be construed to impair or deny others retained by the people.

Article I, Section 27 provides:
Frequent recurrence to fundamental principles is essential to the security of individual rights and the perpetuity of free government.

**3.** Plaintiffs' challenge on vagueness grounds of the fetal experimentation statute is discussed and determined in this court's contemporaneously issued Memorandum Decision. Vagueness issues also are presented in the Utah statutes on post-viability abortion requirements, the exception for serious medical emergency, and spousal notification. Plaintiffs' claims concerning these issues remain under advisement.

**4.** As the Utah Supreme Court noted,
Since the due process clause of our state Constitution (Article I, Section 7) is substantially similar to the Fifth and Fourteenth Amendments to the federal Constitution, the decisions of the Supreme Court of the United States on the federal due process clauses are highly persuasive as to the application of that clause of our state Constitution."
*Terra Utilities, Inc. v. Public Serv. Comm'n*, 575 P.2d 1029, 1033 (Utah 1978).

vagueness issues in the aforementioned contemporaneously issued Memorandum Decision and Order. In *Greenwood*, the Utah Supreme Court said,

> The void-for-vagueness doctrine requires that a statute or ordinance define an offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

817 P.2d at 819–20 (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

■ We see no reason to apply the vagueness analysis under the Utah Constitution any differently than it is applied under the Federal Constitution. In the analysis of a criminal law, the basic test for vagueness is whether "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Baggett v. Bullitt*, 377 U.S. 360, 367, 84 S.Ct. 1316, 1320, 12 L.Ed.2d 377 (1964). If the statute in question does not implicate First Amendment rights, to prevail in a facial challenge on grounds of vagueness plaintiffs must demonstrate that the statute is "impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).[5] The statute must be "utterly devoid of a standard of conduct so that it 'simply has no core.'" *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228 (11th Cir.1982).

It is undeniable that terms such as "grave" and "health" cannot be definitively defined to account for every woman and every fetus in all conceivable circumstances. The Utah Legislature recognized the impossibility of this task, and instead of attempting further definition, in enacting the Utah statute it permitted the "professional judgment" of the attending physi-

cian to constitute the measure of determining the meaning of these general terms in a particular case. Utah Code Ann. § 76–7–302(2)(a), (d), (e) (Supp.1991).

The Supreme Court has upheld other statutes with similar mens rea provisions. *See, e.g., United States v. Vuitch*, 402 U.S. 62, 69–72, 91 S.Ct. 1294, 1298–1299, 28 L.Ed.2d 601 (1971) (statute permitting abortion when necessary in physician's judgment to preserve health of woman was not void for vagueness); *Doe v. Bolton*, 410 U.S. 179, 191–192, 93 S.Ct. 739, 747, 35 L.Ed.2d 201 (1973) (statute requiring determination of necessity of abortion based upon attending physician's best clinical judgment not void for vagueness). The rationale behind these cases is applicable to the Utah Act. As the Supreme Court said in *Bolton*, "Whether, ... 'an abortion is necessary' [for a patient's physical or mental health] is a professional judgment that the Georgia physician will be called upon to make routinely." 410 U.S. at 192, 93 S.Ct. at 747. Similarly, under the Utah Act, whether an abortion is necessary to "prevent grave damage to the woman's medical health" is a routine question for the professional judgment of the attending physician. In addition, to face criminal liability under the Act, a doctor would have to violate his or her professional judgment. Accordingly, plaintiffs' vagueness challenge to Utah Code Ann. § 76–7–302(2)(a), (d), and (e) (Supp.1991) based upon the Utah Constitution is dismissed.

**B. Equal Protection**

■ Plaintiffs' Fourth Cause of Action alleges that women in Utah are denied equal protection under the law because the Utah Act imposes burdens upon only women's reproductive choices and bodily integrity in violation of Sections 1, 2, 3, 24, 25, and 27 of the Utah Constitution.[6]

---

**5.** In *Hoffman,* the court noted an exception in which state statutes could be invalidated in a facial challenge, i.e., infringement upon the First Amendment rights of plaintiffs, or overbreadth in inhibiting the First Amendment rights of others. 455 U.S. at 494–495, 102 S.Ct. at 1191. This court considers that First Amend-

ment guarantees are not infringed in this case and that the overbreadth test is satisfied.

**6.** The text of Sections 1, 2, 3, 25 and 27 of the Utah Constitution is set out in footnote 2. Article I, Section 24 provides:

> All laws of a general nature shall have uniform operation.

The Equal Protection Clause of the Utah Constitution is not identical to the Equal Protection Clause of the United States Constitution, but the Utah Supreme Court has said that, "[t]he principles and concepts embodied in the federal equal protection clause and [Article I, section 24 of the Utah constitution] are substantially similar." *Blue Cross and Blue Shield v. State,* 779 P.2d 634, 637 (Utah 1989).[7] In a prior case, the Utah high court said, "these provisions [the Fourteenth Amendment and Article I, Section 24] embody the same general principle: persons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstances were the same." *Malan v. Lewis,* 693 P.2d 661, 669 (Utah 1984). Men and women are not "similarly situated" with respect to ability to carry a child. Manifestly, the Utah Act does not violate the Utah Equal Protection Clause by prohibiting elective abortions for the only sex capable of having abortions. *See also, Redwood Gym v. Salt Lake County Comm'n,* 624 P.2d 1138, 1147 (1981) ("Not all legal provisions which take gender into consideration create such sex-based classifications.")

■ The remaining equal protection inquiry is whether the Act bears a rational relationship to a legitimate government interest.[8] In *Redwood Gym,* the Supreme Court of Utah said:

> Where a legislative enactment creates no inherently suspect classification and touches upon no fundamental interest as recognized by the Constitution it satisfies the exigencies of equal protection if the classification made thereby has a rational basis in a legitimate legislative objective.

624 P.2d at 1146. The Supreme Court has recognized that the State has an "important and legitimate interest in protecting the potentiality of human life." *Roe v. Wade,* 410 U.S. 113, 162, 93 S.Ct. 705, 731, 35 L.Ed.2d 147 (1973). Prohibiting elective abortions except in certain circumstances determined by the legislature to embody the public policy of the State is a rational way of promoting this interest in potential human life while balancing the interests of the pregnant woman.

### C. Establishment of Religion Clause

■ Plaintiffs' Fifth Cause of Action alleges violations of the right to free speech,[9] free exercise of religion, as well as the Establishment Clause, in contravention of Article I, Sections 1, 3, 4, and 15 of the Utah Constitution.[10]

There is very little Utah law interpreting the "Establishment Clause" provision of Article I, § 4. What law there is suggests that the Utah Supreme Court would find federal constitutional analysis persuasive.

> The rights of conscience shall never be infringed.
> The State shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; no religious test shall be required as a qualification for any office of public trust or for any vote at any election; nor shall any person be incompetent as a witness or juror on account of religious belief or the absence thereof. There shall be no union of Church and State, nor shall any church dominate the State or interfere with its functions. No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or for the support of any ecclesiastical establishment. No property qualification shall be required of any person to vote, or hold office, except as provided in this Constitution.
> Article I, § 15 provides in relevant part:
> No law shall be passed to abridge or restrain the freedom of speech or of the press.

---

7. The court noted one exception to this rule: However, our examination into the reasonableness of economic legislation under article I, section 24 of the Utah Constitution is at least as vigorous as that required by the federal equal protection clause, and probably more so.
*Blue Cross,* 779 P.2d at 637. This exception, of course, is not applicable here.

8. This inquiry is sometimes stated as "whether the classification of those subject to the legislation is a reasonable one and bears a reasonable relationship to the achievement of a legitimate legislative purpose." *Malan v. Lewis,* 693 P.2d at 670.

9. Since plaintiffs' Seventh Cause of action centers on freedom of speech violations, freedom of speech issues relating to the Fifth Cause of action will be deferred to that section.

10. The text of sections 1 and 3 is set out in footnote 2 *supra.* Article I, § 4 provides:

*Thomas v. Daughters of Utah Pioneers,* 114 Utah 108, 197 P.2d 477, 488–90 (1948) *(appeal dismissed,* 336 U.S. 930, 69 S.Ct. 739, 93 L.Ed. 1090 (1949)).

The federal Establishment Clause provides: "Congress shall make no law respecting an establishment of religion." This clause has been interpreted by the Supreme Court to mean that "government may not promote or affiliate itself with any religious doctrine or organization" and "may not discriminate among persons on the basis of their religious beliefs." *County of Allegheny v. ACLU,* 492 U.S. 573, 590, 109 S.Ct. 3086, 3099, 106 L.Ed.2d 472 (1989).

Under the facts of this case as submitted in connection with defendants' motions for summary judgment and to dismiss, this court has held that the federal Establishment Clause is not violated.[11] This court incorporates the discussion in its contemporaneously issued Memorandum Decision concerning the Establishment Clause of the federal Constitution, and upholds the Act on Utah Establishment Clause grounds.

**D.  Free Exercise Clause**

█ Similarly, there is a lack of substantial case law on the issue of Utah's Free Exercise Clause. In a case that did discuss the issue, the Utah Supreme Court adopted the analysis of the United States Supreme Court. *In re State in Interest of Black,* 3 Utah 2d 315, 283 P.2d 887, 901–905 (1955) *(cert. denied,* 350 U.S. 923, 76 S.Ct. 211, 100 L.Ed. 807 (1955). Accordingly, this court applies federal constitutional analysis and holds that the Utah Act does not violate Utah's free exercise of religion clause. This conclusion is reached substantially for the same reasons set forth in this court's contemporaneously issued Memorandum Decision in which the Utah Act is held not to violate the federal Free Exercise Clause.

**E.  Involuntary Servitude**

█ Plaintiffs' Sixth Cause of Action alleges that the Utah Act violates guarantees of freedom from involuntary servitude contained in Section 3, 21 and 27 of the Utah Constitution.[12] There is a paucity of Utah law interpreting § 21, the Utah constitutional provision that directly addresses involuntary servitude. The Utah Supreme Court has examined § 21 in terms of Thirteenth Amendment law, probably because the wording of the federal clause and the Utah clause are identical. *Salt Lake City v. Tax Commission of Utah,* 11 Utah 2d 359, 359 P.2d 397, 399 (1961). This court presumes that § 21 would be interpreted in the same way as the Thirteenth Amendment, and dismisses the Utah involuntary servitude claim under the same analysis set forth in the discussion of involuntary servitude in this court's contemporaneously issued Memorandum Decision.

**F.  Free Speech**

█ Plaintiffs' Seventh Cause of Action alleges that the Act violates Sections 1, 3, 14, 15, and 27 of the Utah Constitution by prohibiting physicians and others from "ex-

---

11. In upholding the Utah Statute as against a federal Establishment clause challenge, this court quoted the Supreme Court in cases which are equally apropos to the Utah provisions. In *Edwards v. Aguillard,* 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987), the Court said,
    A governmental intention to promote religion is clear when the State enacts a law to serve a religious purpose. This intention may be evidenced by promotion of religion in general ... or by advancement of a particular religious belief.... While the Court is normally deferential to a State's articulation of a secular purpose, it is required that the statement of purpose be sincere and not a sham.
    *Id.* at 585–586, 107 S.Ct. at 2579. In *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), the Supreme Court said,

[I]t does not follow that a statute violates the Establishment Clause because it 'happens to coincide or harmonize with the tenets of some or all religions'.... That the Judaeo–Christian religions oppose stealing does not mean that a State or the Federal Government may not, consistent with the Establishment Clause, enact laws prohibiting larceny.
*McRae,* 448 U.S. at 319, 100 S.Ct. at 2689.

12. The text of Sections 3 and 27 are set out in full in footnote 2 *supra.*
    Article 1, Section 21 provides:
    Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within this state.

ercising their freedom of conscience and expression." [13] Plaintiffs' Fifth Cause of Action also claims free speech violations in that clergy allegedly would have certain limitations placed upon their religion-based abortion counseling.

 The Utah Act limits liability for an illegal abortion to "[a]ny person who *intentionally performs* an abortion other than authorized by this part...." Utah Code Ann. § 76–7–314 (Supp.1991) (emphasis added). It follows that a woman who seeks or obtains an abortion does not risk criminal prosecution.[14] Further, because accessorial liability is only predicated upon aiding, encouraging or soliciting one who engages in conduct *which constitutes an offense*, counselors, clergy or doctors who counsel a woman on abortion options are also not violating the law.[15] Admittedly, if these counselors go so far as to solicit a doctor to perform an abortion against the doctor's professional judgment, there may be liability under the Utah accessorial liability statute. However, as the Utah Supreme Court has noted, "[t]here is a vast distinction between advocating a change in the law by appropriate legislation, and urging people to commit acts in violation of the law.... Freedom of speech and of religion are not unlimited licenses to do unlawful acts under the labels of constitutional privilege." *State v. Musser*, 175 P.2d 724, 731, 175 P.2d 724 (1946) (*vacated on other grounds*, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562 (1948)). Also in this regard, the Supreme Court said in *Osborne v. Ohio*, 495 U.S. 103, 110, 110 S.Ct. 1691, 1696, 109 L.Ed.2d 98 (1990) (quoting *New York v.*

*Ferber*, 458 U.S. 747, 761–762, 102 S.Ct. 3348, 3357, 73 L.Ed.2d 1113 (1982):

> " 'It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute.' "

When the speech in question is intended to incite another to crime, the constitutional right to free speech simply is not applicable. *Id.*

Based upon the foregoing, plaintiffs' Motion to Voluntarily Dismiss Claims Arising Under Sections One, Two, Three, Four, Seven, Fourteen, Fifteen, Twenty-one, Twenty-five, and Twenty-seven of the Utah Constitution is denied. Accordingly, state constitutional claims set forth in the First, Fourth, Fifth, Sixth and Seventh Causes of Action are dismissed with prejudice. The application of both parties for fees is denied. Pursuant to local rule 206(b), attorneys for defendants are directed to prepare and lodge with the court a form of judgment in conformance with the rulings made in this decision.

IT IS SO ORDERED.

---

**13.** The text of sections 1, 3, and 27 is set out in full in footnote 2, *supra.* The text of section 15 is set out in footnote 5, *supra.*

Article I, section 14 provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized.

**14.** In fact, the Utah Act specifically excludes pregnant women from liability. "Notwithstanding any other provision of law, a woman who seeks to have or obtains an abortion for herself is not criminally liable." Utah Code Ann. § 76–7–314(1)(b) (Supp.1991).

**15.** Utah's accessorial liability statute provides:

Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, request, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct. Utah Code Ann. § 76–2–202 (1990).