## IN RE LOAN OF SCHOOL FUND.

1. LEGISLATIVE QUESTION, HOW PROPOUNDED.
When the opinion of the supreme court is requested by the general assembly as to the constitutionality of pending legislation, the particular point of objection or doubt respecting the constitutionality of the bill should be pointed out, and some specific question submitted.

2. LOAN OF SCHOOL FUND.
A legislative act providing for a loan of $650,000 of the public school fund of the state to the general revenue funds of 1887, 1888 and 1889, without providing any definite time, means, or security, for the repayment thereof, would be unconstitutional.

3. DEBT FOR CASUAL DEFICIENCIES.
The state cannot contract a debt to provide for casual deficiencies of the revenue in excess of one hundred thousand dollars, since the valuation of taxable property within the state has reached the limit of one hundred millions of dollars.

THE secretary of the senate sent the following communication to the justices of the supreme court: "I am instructed

by the Honorable Senate to submit Senate Bill No. 11 to your Honors for an opinion as to its constitutionality." The communication was accompanied by the bill, but no specific question or questions were submitted.

PER CURIAM. The bill transmitted contains several sections relating to the loaning of $650,000 of the public school fund to the general revenue funds of 1887, 1888 and 1889.

We would respectfully call the attention of the honorable senate to the fact that it is not in accordance with the practice of this court to give an opinion upon any such general subject as the constitutionality of a bill, unless some particular point of objection or doubt respecting the constitutionality of the bill is pointed out and some specific question submitted. See Constitution, art. 6, sec. 3; also, the following opinions of this court: *In re Irrigation*, 9 Colo. 620–22; *In re House Bill*, No. 165, 15 Colo. 593–4.

The views of the court are so fully expressed in the two opinions above cited that we need not repeat them. We trust the honorable senate will see the propriety of withdrawing its request for our opinion as to the constitutionality of the bill as submitted.

The foregoing answer being returned to the honorable senate, that body again requested the opinion of the court, "as to whether Senate Bill No. 11 is in conflict with the provisions of sec. 3 of article 9, or sec. 3 of article 11 of the Constitution."

The bill as submitted the second time reads as follows:

"Sec. 1. There shall be loaned from the Public School Permanent fund to the General Revenue fund of 1887, 1888 and 1889, for the use and benefit thereof the sum of $650,000.

"Sec. 2. The state treasurer is hereby required to make the transfer on the books of his office, made necessary in section 1 of this act, and in such manner that the state of Colorado shall stand charged as a debtor to the Public School Permanent fund as money loaned from that fund to the state

in behalf of the General Revenue fund for 1887, 1888 and 1889, and the faith of this state is hereby pledged to repay to the Public School Permanent fund the full amount so loaned with interest thereon at the rate of four per cent per annum from the date of said transfer, payable semi-annually, May 31st and November 30th, from the General Revenue fund each year until the return thereof. The state treasurer shall also, in writing, notify the state auditor of such transfer, and he shall make the proper transfer and entry upon the books of his office.

"Sec. 3. For the purpose of carrying out the provisions of this act, the state treasurer is hereby authorized, with the proceeds of this loan, to redeem and cancel the warrants of 1887, 1888 and 1889 that are now held by him as an investment in the Public School Permanent fund, the State University fund and the Internal Improvement fund, permanent and income.

"Sec. 4. For the purpose of paying the loan provided for in the foregoing section all excess revenues for the year 1892 and subsequent years and not otherwise appropriated, are hereby appropriated to the payment thereof. At the end of each fiscal year it is hereby made the duty of the treasurer to certify to the auditor the amount of money in his hands standing to the credit of the general fund and not otherwise appropriated, whereupon the auditor shall issue his warrant for the amount so certified, which amount the treasurer shall place to the credit of said loan."

The following provisions of the constitution are considered in the opinion:—

### ARTICLE IX.

" Sec. 3. The Public School fund of the state shall forever remain inviolate and intact; the interest thereon only shall be expended in the maintenance of the schools of the state, and shall be distributed amongst the several counties and school districts of the state, in such manner as may be prescribed by law. No part of this fund, principal or interest, shall ever be transferred to any other fund, or used or appro-

priated except as herein provided. The state treasurer shall be the custodian of this fund, and the same shall be securely and profitably invested as may be by law directed. The state shall supply all losses thereof that may in any manner occur."

## ARTICLE X.

" Sec. 16. No appropriation shall be made nor any expenditure authorized by the general assembly whereby the expenditure of the state during any fiscal year shall exceed the total tax then provided for by law and applicable for such appropriation or expenditure unless the general assembly making such appropriation shall provide for levying a sufficient tax not exceeding the rates allowed in section eleven of this article to pay such appropriation or expenditure within such fiscal year. This provision shall not apply to appropriations or expenditures to suppress insurrection, defend the state, or assist in defending the United States in time of war."

## ARTICLE XI.

" Sec. 3. The state shall not contract any debt by loan in any form except to provide for casual deficiencies of revenue, erect public buildings for use of the state, suppress insurrection, defend the state, or, in time of war, assist in defending the United States ; and the amount of the debt contracted in any one year to provide for deficiencies of revenue shall not exceed one-fourth of a mill on each dollar of valuation of taxable property within the state, and the aggregate amount of such debt shall not at any time exceed three-fourths of a mill on each dollar of said valuation until the valuation shall equal one hundred millions of dollars, and thereafter such debt shall not exceed one hundred thousand dollars, and the debt incurred in any one year for erection of public buildings shall not exceed one-half mill on each dollar of said valuation, and the aggregate amount of such debt shall never at any time exceed the sum of fifty thousand dollars (except as provided in section five of this article), and in all cases the valuation in this section mentioned shall be that of the assessment last preceding the creation of said debt."

MR. JUSTICE ELLIOTT delivered the opinion of the court.

In view of the stringent provisions of our state constitution, we are of the opinion that Senate Bill No. 11, as submitted for our consideration, is unconstitutional.

Section 3 of article 9 of the Constitution is an imperative mandate binding upon all departments of the government. It provides, among other things, that " the Public School fund of the state shall forever remain inviolate and intact; " and further, that no part of this fund, principal or interest, shall ever be transferred to any other fund or used or appropriated except as herein provided." It is true, the section provides that the Public School fund shall be " invested as may be by law directed; " but a further requirement is, that such fund shall be " securely and profitably invested." The security of the investment is of the first and highest importance.

It may in some cases be difficult to determine in advance whether a proposed investment of the school fund will be secure as well as profitable. In general, legislation respecting such matters must be left to the wisdom and discretion of the general assembly and of the chief executive of the state. But in this case, there would seem to be no room for a difference of opinion. By the terms of the bill submitted, it is proposed to loan $650,000 of the Public School fund to the general revenue funds of 1887, 1888 and 1889. The bill provides for the repayment of such loan out of the " excess revenues for the years 1892 and subsequent years and not otherwise appropriated." But no certain amount or definite portion of the revenues of 1892, or any subsequent year, is set apart for the payment of such loan; no guaranty or assurance is given that there will be any excess revenue for 1892 or any subsequent year; and no other means of repayment is provided.

Again, the bill proposes to devote the proceeds of the loan, that is, $650,000 of the Public School fund of the state, " to redeem and cancel the warrants of 1887, 1888 and 1889," now held by the state treasurer, " as an investment in the

Public School Permanent fund, the State University fund, and the Internal Improvement fund, permanent and income." What proportion of the warrants so held belongs to each of these several funds, does not appear; but presumably in the aggregate the warrants are equal to the full amount of the proposed loan. It would seem that if section 16 of article 10 of the Constitution was complied with in respect to the revenues and appropriations for the years 1887, 1888 and 1889, respectively, the payment of the warrants for those years has already been provided for, and so the proposed loan is unnecessary. If the payment of the warrants for those years was not provided for by valid appropriations as the constitution requires, certainly there would be no security in further involving the Public School fund in such transactions. As was said in the case of *The People ex rel. Seeley v. May*, 9 Colo. 92, " the intention would seem to be that the annual state tax should meet the annual state expenditure."

If the public school funds of the state, or any part thereof, are to be invested in state warrants, the investment should be in warrants of unquestionable validity,—in warrants based upon constitutional appropriations,—in warrants the payment of which has been provided for with the greatest certainty. A loan of the Public School fund to be repaid out of contingent or doubtful future revenues, as provided in the bill submitted, cannot be considered as " securely invested " and would, therefore, be without constitutional sanction.

According to the several provisions of our constitution, no money can be paid out of the state treasury except upon a valid appropriation; nor can a valid appropriation be made unless the revenue within constitutional limits be provided for its payment. *In re Appropriations*, 13 Colo. 325; *In re House Resolutions*, No. 25, 15 Colo. 602; *Mute & Blind Institute v. Henderson*, ante p. 98; *In re Continuing Appropriations*, ante p. 192.

Our attention is called to section 3 of article 11 of the Constitution. This section affords but little relief. We are advised that the valuation of taxable property within the state

has, ever since 1887, more than equaled one hundred millions of dollars. Hence, the state cannot contract a debt to provide for casual deficiencies of the revenue in excess of one hundred thousand dollars ; and so the loan provided by the bill cannot be upheld under this provision.

We must not be understood as expressing any opinion one way or the other as to the validity of the warrants mentioned in section 3 of the bill as submitted. We have not been in any way advised as to their character, and have not had the assistance of, and briefs or arguments of, counsel. Express constitutional authority (sec. 3, art. 6) constrains us to render an opinion in this manner.