OCCIDENTAL OIL SHALE, INC.,
Plaintiff-Appellee,

v.

STATE BOARD OF LAND COMMIS-
SIONERS OF COLORADO; and its
members, Rowena Rogers, William H.
Claire and Tommy Neal, Defendants-
Appellants.

No. 82SA455.

Supreme Court of Colorado,
En Banc.

Dec. 10, 1984.

Rehearing Denied Jan. 14, 1985.

Daniel R. Hale, Grand Junction, Davis, Graham & Stubbs, Robert H. Harry, Joseph P. McMahon, Jr., Denver, for plaintiff-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Melinda Kassen, Asst. Atty. Gen., Janet L. Miller, Deputy Atty. Gen., Denver, for defendants-appellants.

LOHR, Justice.

The District Court for the City and County of Denver set aside a decision of the State Board of Land Commissioners (board) denying an application by Occidental Oil Shale, Inc. (Occidental) for a permit to explore the extent of an alleged discovery of oil shale deposits on certain lands. The district court disagreed with the board's conclusion that the lands in question were not "lands belonging to the state" under section 36–1–140, 15 C.R.S. (1973), and thus were not subject to the exploration permit provisions of the statute.[1] The board appealed from the district court's judgment.[2] We agree with the board that the lands do not belong to the state within the meaning of section 36–1–140. Therefore, we reverse the judgment of the district court and remand the case to that court with directions that it reinstate the board's decision.

I.

Sections 16 and 36 in every township were granted to Colorado by the United States Congress for the support of common schools by section 7 of the Colorado Enabling Act.[3] Section 7 also provided that, where such sections had been sold or otherwise disposed of by an act of Congress, the state should receive "other lands equivalent thereto." Congress also enacted certain statutes of general applicability providing the mechanism by which the states could select indemnity lands in lieu of any original school grant lands that had been disposed of or otherwise proved unavailable for any of a number of reasons detailed in the statutes. These statutes are codified in their present form at 43 U.S.C. §§ 851–852 (1982).

Federal lands containing known mineral resources could not be selected by the states as indemnity lands prior to 1958. In that year, Congress extended the indemnity grant to include the right to select mineral lands to the extent the indemnification was sought for lost mineral lands. Pub.L. No. 85–771, § 2, 72 Stat. 928, 928 (1958).

On September 4, 1979, the board, acting on behalf of the State of Colorado,[4] submitted a list to the Bureau of Land Management, United States Department of the Interior, selecting 6,840 acres of oil shale lands in Rio Blanco County in lieu of certain designated school lands that had proved unavailable for disposition by the United States. See § 7, Colorado Enabling Act.

1. The version of section 36–1–140, 15 C.R.S. (1973), in effect at the time of Occidental's application provided:

Location of mineral claims may be made upon unleased mineral lands belonging to the state. The discoverer of a body of mineral in either a lead, lode, ledge, deposit, vein, or contact shall immediately post conspicuously a notice declaring that he has made such a discovery on the date attached to the notice. Within ten days after posting said notice, the discoverer must notify the state board of land commissioners of said discovery and arrange for a permit to explore the extent of the discovery. Within sixty days from the date of discovery, the locator shall be required to take a lease upon such terms as may be agreed upon by the state board of land commissioners, or apply for an extension of the permit. In its present form, this statute expressly excludes coal and oil shale claims from its terms. § 36–1–140, 15 C.R.S. (1984 Supp.).

2. The board appealed the judgment of the district court to the Colorado Court of Appeals. We accepted jurisdiction pursuant to section

13–4–110(1)(a), 6 C.R.S. (1973), because of a possible issue concerning the constitutionality of section 36–1–140, 15 C.R.S. (1973). More precisely, Occidental filed a motion to transfer this matter from the court of appeals to this court on the grounds that the board argued below, and might argue on appeal, that the construction of section 36–1–140 adopted by the district court conflicts with the board's constitutional duty to maximize revenue in its management of the state's land. Colo. Const. art. IX, § 10. Jurisdiction to determine cases in which the constitutionality of a statute is in question is withheld from the court of appeals by section 13–4–102(1)(b), 6 C.R.S. (1973). The basis on which we resolve this appeal obviates the need to address the constitutional issue.

3. The Colorado Enabling Act was passed by Congress on March 3, 1875. 18 Stat. 474.

4. The State Board of Land Commissioners asserts authority to select indemnity lands on behalf of the State of Colorado pursuant to article IX, section 10 of the Colorado Constitution and section 36–1–105, 15 C.R.S. (1973).

On September 24, 1979, Occidental notified the board that Occidental had discovered oil shale on the selected lands and that it had located mineral claims on all of those lands based on that discovery. Pursuant to section 36–1–140, Occidental requested a permit from the board to explore the extent of the discovery and stated to the board that Occidental "stands ready to take a lease or apply for an extension of the above requested permit to further explore such lands."

On October 15, 1979, the board denied Occidental's application for an exploration permit. The board concluded that the lands in question would not belong to the state for the purposes of a mineral claim location pursuant to section 36–1–140 until the Secretary of the Interior approved the state's selection and legal title passed to the state.[5]

Occidental brought an action in the district court for judicial review of the board's denial pursuant to section 24–4–106, 10 C.R.S. (1982). The district court set aside the board's decision to deny Occidental an exploration permit. The court concluded that, by identification and selection of indemnity lands in documents submitted to the Bureau of Land Management, Colorado acquired a sufficient interest in the selected lands so that these properties constituted "lands belonging to the state" upon which valid mineral claims could be located pursuant to section 36–1–140. The matter was remanded by the district court to the board for further proceedings on Occidental's application. The board then brought this appeal.

## II.

When Occidental submitted its application for an exploration permit, section 36–1–140 provided that "location of mineral claims may be made upon unleased mineral lands belonging to the state." We conclude that the selected lands were not "lands belonging to the state" at the time Occidental made its alleged discovery.

Occidental relies on *Wyoming v. United States*, 255 U.S. 489, 41 S.Ct. 393, 65 L.Ed. 742 (1921), for its contention that an equitable interest in the selected lands passed to the state at the moment of selection. In that case, the United States Supreme Court reviewed the nature of the federal/state relationship following the selection of certain indemnity lands by Wyoming. The court concluded:

It is not as if the selection was merely a proposal by the State which the [federal] land officers could accept or reject. They had no such option to exercise, but were charged with the duty of ascertaining whether the State's waiver and selection met the requirements of the congressional proposal and of giving or withholding their approval accordingly. The power confided to them was not that of granting or denying a privilege to the State, but of determining whether an existing privilege conferred by Congress had been lawfully exercised;—in other words, their action was to be judicial in its nature and directed to an ascertainment and declaration of the effect of the waiver and selection by the State in 1912. If these were valid then—if they met all the requirements of the congressional proposal, including the directions given by the Secretary—they remain valid notwithstanding the subsequent change in conditions. Acceptance of such a proposal and full compliance therewith confer vested rights which all must respect. Equity then regards the State as the owner of the selected tract . . . .

255 U.S. at 496–97, 41 S.Ct. at 394–95. *Accord Payne v. New Mexico*, 255 U.S. 367, 41 S.Ct. 333, 65 L.Ed. 680 (1921). Occidental asserts that, since section 2–4–401(5), 1B C.R.S. (1980), provides that the term "lands" when used in a statute includes "lands, tenements, and hereditaments, and all rights thereto and all interests therein," the state's equitable interest in the selected lands qualifies these properties as "lands belonging to the state" for

---

**5.** At the time the board considered Occidental's request, the Secretary of the Interior had taken no action concerning the state's selection of the indemnity lands.

the purposes of section 36–1–140. Therefore, according to Occidental, it could locate mineral claims upon the selected lands pursuant to section 36–1–140 and is entitled to an exploration permit.

In *Andrus v. Utah*, 446 U.S. 500, 100 S.Ct. 1803, 64 L.Ed.2d 458 (1980), however, the United States Supreme Court concluded that the nature of the federal government's role in the approval of a state's selection of indemnity lands was altered by a combination of congressional legislation and executive withdrawals of federal lands from disposal after *Wyoming v. United States* was decided. In *Andrus*, the Supreme Court held that the Secretary of the Interior now has broad discretion to decide whether to classify lands as available for indemnity selection by the states. 446 U.S. at 519–20. To reach this conclusion, the court relied on the powers granted to the Secretary of the Interior in section 7 of the Taylor Grazing Act to classify federal lands for various uses,[6] and on the fact of the withdrawal of all federal lands from disposal, prior to classification, by section 1 of the Taylor Grazing Act[7] and subsequent executive orders of the president. 446 U.S. at 511–20, 100 S.Ct. at 1809–13.

■ The foundation in *Wyoming v. United States* for the conclusion that the state has an equitable interest in selected lands has been undermined by the subsequent legislation and executive action described in *Andrus*. The function of the Secretary of the Interior upon selection is no longer entirely "judicial in its nature," 255 U.S. at 497, 41 S.Ct. at 395, and is no longer restricted to "determining whether an existing privilege conferred by Congress had been lawfully exercised," 255 U.S. at 496, 41 S.Ct. at 394. Rather, the Secretary of the Interior now has broad but as yet incompletely-defined discretion[8] to withhold federal lands from classification as lands available for indemnity selection by the states. Even assuming that a state's selection of land satisfies all of the criteria for a proper selection of indemnity lands as detailed in 43 U.S.C. §§ 851–852, the Secretary of the Interior in the proper exercise of his discretion can withhold the lands from classification as indemnity lands and deny the selection. *See Andrus v. Utah*, 446 U.S. at 520, 100 S.Ct. at 1813. Therefore, contrary to the situation existing at the time *Wyoming v. United States* was decided, a state now obtains no assurance that it will receive all or any selected indemnity lands until the Secretary of the Interior makes the discretionary classification decision. Until that decision has been

---

6. The Taylor Grazing Act was passed by Congress in 1934. 48 Stat. 1269. Section 7 of the Taylor Grazing Act, as amended in 1936, provides in relevant part:

> The Secretary of the Interior is authorized, in his discretion, to examine and classify any lands withdrawn or reserved by Executive order of November 26, 1934 (numbered 6910), and amendments thereto, and Executive order of February 5, 1935 (numbered 6964), or within a grazing district, which are more valuable or suitable for the production of agricultural crops than for the production of native grasses and forage plants, or more valuable or suitable for any other use than for the use provided for under this subchapter or proper for acquisition in satisfaction of any outstanding lieu, exchange or script [sic] rights or land grant, and to open such lands to entry, selection, or location for disposal in accordance with such classification under applicable public-land laws.... Such lands shall not be subject to disposition, settlement, or occupation until after the same have been classified and opened to entry ....

43 U.S.C. § 315f (1982).

7. Section 1 of the Taylor Grazing Act is codified, as amended, as 43 U.S.C. § 315 (1982).

8. In *Andrus*, the United States Supreme Court held that it was not an abuse of that discretion for the Secretary to find that indemnity lands selected by Utah were grossly disparate in value, though equal in acreage, to the original school lands granted and to refuse to classify these lands for selection for this reason. The court intimated, however, that the Secretary's discretion is not limited to value comparisons, stating:

> We therefore hold that the 1936 amendment to the Taylor Grazing Act conferred on the Secretary the authority in his discretion to classify lands within a federal grazing district as proper for school indemnity selection. And we find no merit in the argument that the Secretary's "grossly disparate value" policy constitutes an abuse of the broad discretion thus conferred.

446 U.S. at 520, 100 S.Ct. at 1813. The boundaries of that discretion remain unexplicated.

made, the state has only an incipient prospect of future ownership of the selected lands, and these properties cannot be considered "lands belonging to the state" within the meaning of section 36–1–140. *See Justheim v. Division of State Lands*, 659 P.2d 1075 (Utah 1983).

In summary, we hold that the lands in question did not belong to the state upon selection and that Occidental could not locate mineral claims on these lands pursuant to section 36–1–140 for this reason. Thus, the board's decision to deny Occidental an exploration permit was proper.

We reverse the judgment of the district court and remand this case to that court with directions to reinstate the board's order denying the exploration permit.

