COLORADO STATE BOARD OF LAND COMMISSIONERS and Wesley D. Conda, Inc., a Colorado corporation, Petitioners,

v.

COLORADO MINED LAND RECLAMATION BOARD; Board of County Commissioners of Boulder County, Colorado; People for Eldorado Mountain, Inc., a Colorado non-profit corporation; and City of Boulder, Colorado, Respondents.

No. 89SC612.

Supreme Court of Colorado,
En Banc.

April 15, 1991.

As Modified on Denial of
Rehearing May 6, 1991.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Martha E. Rudolph, Asst. Atty. Gen., Denver, for Colorado State Bd. of Land Com'rs.

Welborn Dufford Brown & Tooley, P.C., Richard L. Fanyo, Sasha A. Karpov, Denver, for Wesley D. Conda, Inc.

Clyde O. Martz, Sp. Asst. Atty. Gen., Denver, for Colorado Mined Land Reclamation Bd.

Faegre & Benson, Michael S. McCarthy, Anne W. Kleinkopf, Denver, for People for Eldorado Mountain, Inc.

H. Lawrence Hoyt, Boulder County Atty., Madeline J. Mason, Asst. County Atty., Boulder, for Bd. of County Com'rs of Boulder County.

Joseph N. de Raismes, Robin Wurtzel, Boulder, for City of Boulder.

Kathleen E. Haddock, Denver, for amicus curiae Colorado Mun. League.

Marion A. Brewer, General Counsel, Colorado Counties, Inc., Denver, Beth A. Whittier, El Paso County Atty., Colorado Springs, for amicus curiae Colorado Counties, Inc.

Justice QUINN delivered the Opinion of the Court.

In *Wesley D. Conda, Inc. v. Colorado State Board of Land Commissioners,* 782 P.2d 851 (Colo.App.1989), the court of appeals affirmed a district court judgment which upheld the decision of the Colorado Mined Land Reclamation Board to deny the application of Wesley D. Conda, Inc. (Conda) for conversion of its permit for limited-impact mining to a regular permit for mining operations on land previously leased to Conda by the State Board of Land Commissioners. The court of appeals did not address whether the Board of County Commissioners of Boulder County properly applied its zoning regulations in denying Conda's application for a special-use permit for mining operations, but did hold that the Colorado Mined Land Reclamation Act, as well as Conda's mining leases, required Conda to comply with county zoning regulations. We granted Conda's and the State Land Board's petition for certiorari, and we now affirm the judgment of the court of appeals.

I.

Since 1969 Conda or its predecessors in interest have mined rock, rock moss, and clay on lands near the town of Eldorado Springs in Boulder County, Colorado, pursuant to two mining leases initially granted to Conda's predecessors in interest by the State Board of Land Commissioners (State Land Board).[1] These leases pertained to

---

1. On September 19, 1969, the State Land Board leased 415.67 acres of school land to Wesley Conda and R. Francis Conda for mining rock and rock moss. This lease was assigned to Wesley D. Conda, Inc. on October 1, 1984, and the assignment was approved by the State Land Board on November 5, 1984. On September 19, 1973, the State Land Board granted a lease to

415.67 acres of public lands which the United States Congress had granted to the State of Colorado for the support of Colorado public schools upon Colorado's admission to the Union in 1876. *See* Colorado Enabling Act, § 7, 1A C.R.S. (1980); *Occidental Oil Shale, Inc. v. State Board of Land Commissioners of Colorado,* 692 P.2d 321, 322 (Colo.1984), *cert. denied* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 50 (1985). We refer to these public lands as school lands. The two leases granted Conda "the right and privilege of exploring and prospecting for, and mining for and taking" rock, rock moss, and clay, from the leased land. The leases also provided that the lessee will "fully comply with all the provisions, terms, and conditions of all laws, whether State or Federal, and orders issued thereunder which may be in effect during the continuance hereof relating to mining or other operations of Lessee hereunder."

The State Land Board, pursuant to Article IX, section 9 of the Colorado Constitution, has the authority to direct, control, and dispose of school lands "under such regulations as are and may be prescribed by law." Article IX, section 10 of the Colorado Constitution imposes on the State Land Board the duty to provide for "the location, protection, sale or other disposition" of school lands not only under "such regulations as may be prescribed by law" but also "in such manner as will secure the maximum possible amount therefor." In addition, Art. IX, section 10 provides as follows:

> The general assembly shall, at the earliest practicable period, provide by law that the several grants of land made by congress to the state shall be judiciously located and carefully preserved and held in trust subject to disposal, for the use and benefit of the respective objects for which said grants of land were made, and the general assembly shall provide for the sale of said lands from time to time; and for the faithful application of the proceeds thereof in accordance with the terms of said grants.

In conjunction with the federal grant of public lands for the benefit of Colorado public schools, the Colorado Constitution creates a state public school fund which "shall be expended in the maintenance of the schools of the state, and shall be distributed amongst the several counties and school districts of the state, in such manner as may be prescribed by law." Colo. Const. Art. IX, § 3. The powers and duties of the State Land Board include the power to "lease any portion of the land of the state at a rental to be determined by [the board]." § 36–1–113, 15 C.R.S. (1990). By statute, rental or lease payments for sand, gravel, clay, stone, or other minerals on school lands must be credited to "the public school fund for distribution as provided by law." § 36–1–116(1)(a), 15 C.R.S. (1990).

On July 1, 1976, a few years after the leases were issued, the Colorado Mined Land Reclamation Act (Reclamation Act), §§ 34–32–101 to –125, 14 C.R.S. (1984), went into effect.[2] The Reclamation Act creates the Mined Land Reclamation Board (Reclamation Board) and grants the board jurisdiction over "all persons and property, public and private, necessary to enforce the provisions" of the act. § 34–32–105(4), 14 C.R.S. (1984). When the Reclamation Act became effective, operators of existing mining operations were required to file an application for a mining permit with the Reclamation Board by October 1, 1977, in order to continue mining operations. § 34–32–109(4), 14 C.R.S. (1984). The stat-

Colorado Brick Company for clay mining on the 415.67 acres of school land. This lease was assigned, again with the State Land Board's approval, to Wesley D. Conda, Inc., on September 15, 1977.

**2.** Various provisions of the Mined Land Reclamation Act were repealed and reenacted with amendments in 1988. Ch. 249, §§ 1 to 18, 1988 Colo.Sess. Laws 1200–1215. Those amendments, however, are not relevant to our disposi-

tion of this case, as they were enacted subsequent to the administrative proceedings before the Reclamation Board. Our references in the opinion, therefore, are to those provisions of the prior version of the Reclamation Act that were in effect when the Reclamation Board denied Conda's application for a regular mining permit. It is that statutory scheme which provided the basis for the judgment below.

ute requires a limited-impact permit for mining operations affecting less than ten acres and extracting less then 70,000 tons of mineral or overburden in any calendar year. § 34–32–110(1), 14 C.R.S. (1984). An operator conducting mining operations under a limited-impact permit may request a conversion to a regular permit, § 34–32–110(8)(a), 14A C.R.S. (1984), which would authorize "the operator to engage in such mining operation upon the affected land described in his application for the life of the mine." § 34–32–112(1), 14 C.R.S. (1984).

Several provisions of the Reclamation Act condition the issuance of a mining permit upon compliance with local zoning and subdivision regulations. Section 34–32–109(6), 14 C.R.S. (1984), for example, states that the Reclamation Board "shall not grant a permit in violation of city, town, county, or city and county zoning or subdivision regulations or contrary to any master plan for extraction adopted pursuant to section 34–1–304 unless a prior declaration of intent to change or waive the prohibition is obtained by the applicant from the affected political subdivisions."[3] Subsection (6) of section 34–32–109 also states that "[n]othing in this article shall be construed to preempt zoning and land use authority and regulation by political subdivisions pursuant to article 20 of title 29 [Local Government Land Use Control Enabling Act], article 28 of title 30 [County Planning Code], and article 23 of title 31 [Municipal Planning and Zoning Act]." This same concern for local zoning and subdivision regulations is repeated in section 34–32–115, 14 C.R.S. (1984), which contains the procedural requirements and substantive standards for the Reclamation Board's decision on a permit application. Subsection (4) of section 34–32–115 states that the Reclamation Board may grant a permit only if the appli-

cant complies with "all applicable local, state, and federal laws," and subsection 4(e) expressly authorizes the board to deny a permit when the proposed mining operations would be in violation of state or federal law or "any city, town, county, or city and county zoning or subdivision regulations or contrary to any master plan for extraction adopted pursuant to section 34–1–304." The Reclamation Act requires the Reclamation Board to notify "each county in which the area proposed to be mined is located and each municipality located within two miles of the area to be mined of the filing of the application." § 34–32–109(8), 14 C.R.S. (1984).[4]

On September 30, 1977, Conda applied for a limited-impact permit to mine a projected 2,500 tons per year from 9.9 acres within the 415.67 acres of school land leased to it by the State Land Board. The Boulder County Planning Director informed the Reclamation Board that Conda's mining operations had commenced prior to the effective date of Boulder County's then existing requirements for special use and, for that reason, Boulder County had no objection to Conda's application for a limited-impact permit for an area not to exceed ten acres, which, according to the Director, "would constitute a legal nonconforming use." The Reclamation Board approved Conda's application on December 15, 1977, and issued a limited-impact permit on April 12, 1978. The permit provides, in pertinent part, as follows:

Wesley D. Conda, Inc. agrees to be bound by all Rules and Regulations of the Mined Land Reclamation Board, and by all provisions of the 1976 Mined Land Reclamation Act, in compliance with each and every provision thereof, as an express condition of this permit.

---

3. Section 34–1–304(1), 14 C.R.S. (1984), to which section 34–32–109(6) refers, requires county planning commissions for unincorporated areas and for cities and towns having no planning commission to conduct a study, with the aid of maps from the Colorado Geological Survey, of commercial mineral deposits located within their jurisdictions and to develop a master plan for the extraction of such deposits.

4. The Reclamation Act prohibits any state governmental office, other than the Reclamation Board, or any political subdivision of the state from issuing a mining permit pursuant to the act. § 34–32–109(6), 14 C.R.S. (1984).

This permit is issued subject to all requirements of the Colorado Mined Land Reclamation Act and all rules, regulations and standards now in force and any which may in the future be promulgated by the Mined Land Reclamation Board, and this permit may be revoked or suspended for noncompliance with the Act and/or such rules, regulations and standards.

After the limited-impact permit was issued in 1978, there was an increased demand for the rock mined by Conda. On October 3, 1985, Conda filed an application to convert its limited-use permit to a regular permit. Conda's application described proposed mining operations involving approximately 203 acres over the projected mine life of up to seventy years with a maximum annual production of 1.9 million tons. After Conda's application was filed, the Reclamation Board sent the required notice of the application to the Boulder County Planning and Zoning Department.

The school lands leased by Conda were zoned as "Forestry" by a Boulder County Zoning Resolution which became effective on December 17, 1985. By letter dated December 30, 1985, the Boulder County Land Use Director informed the Reclamation Board that Conda's proposed expansion of its mining operations would violate the terms of the Boulder County Zoning Resolution and the Boulder County Comprehensive Plan. This letter stated, in part, as follows:

> The Boulder County Zoning Resolution requires a Special Use Permit for Open Mining in the Forestry Zoning District. Open Mining is defined, in part, as a mining operation which exceeds ten acres of land within a parcel and/or extracts more than 70,000 tons of material. Since the proposed application indicated an expansion from 9.9 acres to 203 acres, and an increase from under 70,000 tons to well over 70,000 tons ... the mining operation is subject to Special Review and

therefore would be in violation of the Boulder County Zoning Resolution.

The Reclamation Board held a public hearing on Conda's application on January 22, 1986. Conda contended at the hearing that it was not required to comply with county zoning regulations because the proposed expansion would occur on school lands exclusively controlled by the State Land Board. Although the Reclamation Board did not address Conda's contention that the county zoning regulations infringed on the authority of the State Land Board, the Reclamation Board denied Conda's application because the proposed mining operations would be in violation of Boulder County's zoning regulations.

Conda filed a complaint in the Denver District Court for judicial review of the Reclamation Board's denial of its permit application and also sought a declaratory judgment on several issues relating to its application, including: whether the provisions of the Reclamation Act authorizing the Reclamation Board to deny a permit for proposed mining operations violative of county zoning regulations are applicable to school land leased by the State Land Board; if those provisions of the Reclamation Act are applicable, whether Conda should be exempted from seeking a special-use permit from the county on the basis that Conda's proposed mining operations would be merely an extension of a nonconforming use under Boulder County zoning regulations predating the 1985 Boulder County Zoning Resolution; and whether the Reclamation Board's denial of Conda's application for a regular use permit infringed on the State Land Board's constitutional authority over the direction, control, and disposition of school lands.[5]

While the case was pending in the district court, the parties filed a stipulation to stay all further proceedings while Conda made application to Boulder County for a

---

**5.** Conda filed its complaint against the Mined Land Reclamation Board, the Board of County Commissioners of Boulder County, and the State Board of Land Commissioners. The City of Boulder and the People for El Dorado Moun-

special-use permit.[6] The district court granted the motion and the proceedings were stayed. On June 18, 1986, Conda applied to Boulder County for a special-use permit to expand its mining operations to a total of approximately 67 acres over a period of fifteen years with a maximum annual production of 650,000 tons. Pursuant to the Boulder County Zoning Resolution, the Boulder County Planning Commission published a notice of public hearing on Conda's application and, after two hearings, recommended that the application be denied.[7] The Board of County Commissioners of Boulder County then published a notice of a public hearing on Conda's application and, upon conclusion of the hearing, denied the application because it would not satisfy all the standards and conditions for a special-use permit required by the Boulder County Zoning Resolution.[8] Specifically, the Board of County Commissioners determined that Conda's application for expanded mining operations would not satisfy the standards and conditions for a special-use permit as set forth in the Boulder County Zoning Resolution for the following reasons: they would not be in harmony with the character of the neighborhood and would not be compatible with the surrounding area because of dust, noise, and traffic; they would adversely affect wildlife in the area and would result in removing an area of old forest growth; they would seriously affect the foothills scenic vista; they would place undue burdens on the existing community of Eldorado Springs; they would adversely affect the safety of recreational and destination bicycle traffic in the area; they would cause major increases in heavy traffic with resulting traffic hazards; they would cause a significant increase in air and noise pollution; they would not provide adequate visual mitigation during the mining phases of the operations; Conda's proposal was lacking a proven reclamation plan; and the proposed mining operations would be detrimental to the health, safety, and welfare of present and future inhabitants of the county.[9] Conda did not file a

tain, a nonprofit corporation, later intervened as defendants in the district court action.

6. Section 20–101 of the Boulder County Resolution provides that a special use "may be established in a zoning district designated by this Resolution only upon approval of the Board of County Commissioners, after review by the Planning Commission, and subject to the conditions set forth in a Special Use Permit issued by the Board of County Commissioners." Subsection (2) of section 20–102 authorizes the Board of County Commissioners to issue a special-use permit for "open mining" in an F (Forestry) district. Boulder County, Colorado, Zoning Resolutions § 20–101 & § 29–102(1) & (2) (1985).

7. Section 20–207 of the Boulder County Zoning Resolution requires the Planning Commission to give public notice of a hearing to review an application for a special-use permit and, after the hearing, to make recommendations to the Board of County Commissioners with respect to the application.

8. Section 20–208 of the Boulder County Zoning Resolution states:

Upon receipt of the recommendations of the Planning Commission, the Board of County Commissioners shall approve, conditionally approve, or deny the application for a Special Use Permit following public hearing, notice of which shall be given as follows:

(1) A notice of said hearing shall be published in a newspaper of general circulation within Boulder County at least thirty (30) days prior to the hearing date;
(2) A written notice of said hearing shall be transmitted at least thirty (30) days prior to the hearing date to the applicant and to adjacent property owners.

Any action taken by the Board of County Commissioners on any request brought before them is and will be based upon and made in reliance upon the entire record of proceedings on the matter, as that record is maintained by the Land Use Department Director and/or the Clerk of the Board of County Commissioners including but not limited to: tape recordings or true transcripts of public meetings or hearings where the proposals were discussed; all written comments of referral agencies; the review and recommendations of the Land Use Staff; and all written commitments, statements, or evidence made or submitted by or in behalf of the applicant(s), landowner(s), or their agents.

9. Section 20–301 of the Boulder County Zoning Resolution states:

An application for a Special Use shall be approved only if the Board of County Commissioners finds that the proposed special use meets the following standards and conditions:

(1) Complies with the minimum zoning requirements of the zoning district in which the special use is to be established, as set forth in this Resolution, and complies with all other applicable requirements of this Resolution

complaint for judicial review of the Board of County Commissioners' denial of its application for a special-use permit.

Proceedings were then resumed in the district court. After conducting a hearing on Conda's claims, the district court entered two rulings. In its first ruling, the court held that under the Boulder County Zoning Resolution Conda could have sought a determination from the Boulder County Board of Adjustment that the proposed mining operations constituted a legal nonconforming use but Conda failed to do so,[10] and on that basis the court rejected Conda's claim that its proposed operations should be exempted from the special-use permit provisions. In its second ruling, the district court concluded that the provisions of the Reclamation Act requiring the Reclamation Board to deny a permit application for mining operations which would violate county zoning regulations do not unconstitutionally infringe on the State Land Board's constitutional authority to direct, control, and dispose of school lands. The district court accordingly affirmed the action of the Reclamation Board in denying Conda's application for a regular mining permit.

Conda and the State Land Board appealed to the court of appeals, which affirmed the judgment of the district court. Because Conda did not seek judicial review of Boulder County's denial of its application for a special-use permit, the court of appeals declined to consider whether the Board of County Commissioners properly applied Boulder County's zoning regulations in denying Conda's application for the special-use permit. The court of appeals, however, did address whether the Reclamation Board properly denied Conda's application for a regular mining permit. While acknowledging that the Colorado Constitution vests the State Land Board with the authority to direct, control, and dispose of school lands under such regulations as may be prescribed by law, the court of appeals reasoned that the General Assembly, in enacting the Reclamation Act, authorized the Reclamation Board to deny a permit if proposed mining operations would violate county zoning or subdivision regulations. Based on this reasoning, the court of appeals concluded that the Reclamation Board properly considered Boulder County's zoning regulations in denying Conda's application for a regular permit. The court of appeals also concluded that Conda's lease requires Conda to comply with "all laws" and that "[t]his language would encompass reasonable zoning regulations." *Conda*, 782 P.2d at 853.

We thereafter granted Conda's petition to consider the following questions: whether the court of appeals properly held that Conda was precluded from appealing Boulder County's denial of its application for a special-use permit due to Conda's failure to seek judicial review of the denial; whether the General Assembly, in enacting the Reclamation Act, intended to confer on coun-

and the Boulder County Subdivision Regulations;

(2) Will be in harmony with the character of the neighborhood and compatible with the surrounding area;

(3) Will be in accordance with the Boulder County Comprehensive Plan;

(4) Will not result in an over-intensive use of land or excessive depletion of natural resources;

(5) Will not have a material adverse effect on community capital improvement programs;

(6) Will not require a level of community facilities and services greater than that which is available;

(7) Will not result in undue traffic congestion or traffic hazards;

(8) Will not cause significant air, water, or noise pollution;

(9) Will be adequately landscaped, buffered, and screened;

(10) Will not otherwise be detrimental to the health, safety, or welfare of the present or future inhabitants of Boulder County.

Section 20–302(1) of the Boulder County Zoning Resolution requires, in addition, that an applicant seeking special-use approval for open mining must comply with a plan of reclamation.

**10.** Section 26–101 of the Boulder County Zoning Resolution authorizes the Board of Adjustment to hear and decide appeals from any decision made by an administrative official charged with enforcement of the zoning regulations and to grant relief when "the strict application of any regulation enacted herein would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the owner of such property." Boulder County, Colorado, Zoning Resolution § 26–101(2) (1985).

ties zoning authority over school lands leased for mining operations by the State Land Board; whether the requirements of the Reclamation Act pertaining to a proposed mining operation's adherence to county zoning regulations unconstitutionally infringe on the authority of the State Land Board to direct, control, and dispose of school lands; and whether the provisions in Conda's leases requiring Conda to comply with all laws, federal or state, include the obligation to comply with Boulder County's zoning regulations. We will address these issues in turn.

## II.

■ The court of appeals held that Boulder County's denial of Conda's application for a special-use permit was not reviewable on appeal because Conda failed to seek judicial review of that decision. We agree with the court of appeals' resolution of this issue.

C.R.C.P. 106(a)(4) authorizes the district court to grant relief in the nature of a remedial writ under circumstances "[w]here any governmental body ... exercising ... quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law." Pursuant to C.R.C.P. 106(b), a complaint seeking a remedial writ must be filed in the district court not later than thirty days after the final decision of the governmental body. We have held on prior occasions that C.R.C.P. 106(a)(4) provides the exclusive remedy for reviewing a governmental decision that is quasi-judicial as distinguished from legislative in nature. These cases, however, did not arise in the context of the denial of a special-use permit. *See, e.g., Board of County Commissioners of Mesa County v. Carter,* 193 Colo. 225, 226–27, 564 P.2d 421, 422 (1977)

(petition for judicial review of rezoning application barred when not filed within thirty days of county commissioners' decision and property owner not joined as indispensable party); *Snyder v. City of Lakewood,* 189 Colo. 421, 427–28, 542 P.2d 371, 375–76 (1975) (judicial review of rezoning decision barred when not filed within thirty days of city council's decision); [11] *see also Norby v. City of Boulder,* 195 Colo. 231, 236, 577 P.2d 277, 280 (1978) (recognizing that "[a]s a general rule, judicial review by way of C.R.C.P. 106(a)(4) is the exclusive remedy for one challenging a rezoning determination on a parcel of property."). The propriety of the court of appeals' refusal to consider Conda's challenge to the denial of its application for a special-use permit depends, therefore, on whether Boulder County's denial of Conda's application was a form of quasi-judicial action.

We considered the nature of quasi-judicial action in *Cherry Hills Resort Development Co. v. City of Cherry Hills Village,* 757 P.2d 622 (Colo.1988), and emphasized that the central focus must be "on the nature of the governmental decision and the process by which that decision is reached." 757 P.2d at 627. If the governmental decision is likely to affect the legal interests of specific individuals, and if the governmental decision is reached through the application of preexisting legal standards or policy considerations to present or past facts developed at a hearing, then "one can say with reasonable certainty that the governmental body is acting in a quasi-judicial capacity in making its determination." *Id.* While the existence of a statute or ordinance mandating notice of the hearing to those persons whose interests are likely to be affected by the decision "is a clear signal that the governmental decision is to be regarded as quasi-judicial," the

11. *Snyder* held that "the enactment of a rezoning ordinance pursuant to the statutory criteria, after notice and a public hearing, constituted a quasi-judicial function subject to certiorari review." 189 Colo. at 426, 542 P.2d at 375. We later pointed out in *Margolis v. District Court,* 638 P.2d 297, 305 (Colo.1981), that, while a rezoning decision is quasi-judicial for purposes of judicial review, zoning and rezoning decisions may also qualify as legislative action subject to the referendum and initiative provisions of the Colorado Constitution. We thus concluded that any language contained in *Snyder* "which might be read as indicating that rezoning is not legislative for the purpose of exercising the constitutional powers of referendum and initiative is hereby expressly overruled." *Id.*

existence of such a statute or ordinance is not indispensable to the quasi-judicial nature of a governmental proceeding "so long as the decision itself and the underlying process are otherwise consistent with the exercise of quasi-judicial authority." *Id.*

Article 20 of the Boulder County Zoning Resolution establishes the procedures and standards for obtaining a special-use permit. The Boulder County Planning Commission, pursuant to these procedures, must give notice of a public hearing to review an application for a special-use permit and, following such hearing, is required to make recommendations to the Board of County Commissioners. Boulder County, Colorado, Zoning Resolution § 20–207 (1985). Upon receipt of the Planning Commission's recommendations, the Board of County Commissioners is required to give public notice of a hearing to the applicant and to adjacent property owners thirty days in advance of the hearing date. Boulder County, Colorado, Zoning Resolution § 20–208 (1985). The Board of County Commissioners must either approve, conditionally approve, or deny the application following a public hearing, and its action must be based "upon and made in reliance upon the entire record of the proceedings on the matter." *Id.*

The decision of the Board of County Commissioners to deny Conda's application for a special-use permit qualified as quasi-judicial action under C.R.C.P. 106(a)(4). After public notice, the Boulder County Planning Commission conducted two public hearings on Conda's application and then recommended to the Board of County Commissioners that Conda's request should be denied. The Board of County Commissioners also conducted a public hearing, after due notice, on Conda's application and determined that the application would not satisfy all the standards and conditions for a special-use permit required by the Boulder County Zoning Regulation.

Although Conda was duly notified of the Board of County Commissioners' denial of its application, Conda did not file a complaint under C.R.C.P. 106(a)(4) for judicial review of the County Commissioners' final decision. The filing of a C.R.C.P. 106(a)(4) complaint was a necessary condition precedent for preserving Conda's right to seek appellate review of Boulder County's denial of Conda's application for a special-use permit. In light of Conda's failure to file a C.R.C.P. 106(a)(4) complaint in the district court, the court of appeals properly declined to address Conda's and the State Land Board's claim that the Board of County Commissioners erred in denying Conda a special-use permit.[12]

### III.

■ Conda and the State Land Board argue that the General Assembly did not intend the Reclamation Act to serve as an authorization for counties to exercise zoning authority over school lands. Although acknowledging that the Local Government Land Use Control Enabling Act of 1974, §§ 29–20–101 to –107, 12A C.R.S. (1986 & 1990 Supp.), and the County Planning Code, §§ 30–28–101 to –137, 12A C.R.S. (1986 & 1990 Supp.), authorize counties, cities, and towns to exercise zoning authority within their respective jurisdictions, Conda and the State Land Board contend that this legislative grant of authority does not include zoning authority over school lands. We find this argument legally unsound.

**12.** In its appeal of the district court judgment, Conda also argued that it should have been exempted from Boulder County's special-use permit process because its proposed mining operations would be nothing more than an extension of its operations commenced prior to the adoption of the Boulder County Zoning Resolution in 1985 and would thus constitute a continuation of a nonconforming use under Boulder County's preexisting zoning regulations. The district court had rejected this claim due to Conda's failure to exhaust its administrative remedy of seeking such a determination from the Boulder County Board of Adjustment. Under the 1985 Boulder County Zoning Resolution, Conda could have applied to the Boulder County Board of Adjustment for relief from the terms of the County Zoning Resolution on the ground of exceptional and undue hardship. Boulder County, Colorado, Zoning Resolution § 26–101(1) (1985). Conda's failure to exhaust this administrative remedy precluded Conda from seeking appellate review of its exemption claim. *See, e.g., Hoffman v. Colorado State Board of Assessment Appeals*, 683 P.2d 783 (Colo.1984).

## A.

Conda and the State Land Board rely initially on a statement in the Local Government Land Use Control Enabling Act that "[n]othing in this article shall serve to diminish the planning functions of the state," § 29–20–102, 12A C.R.S. (1986), and infer from this language a legislative intent to exclude school lands from county zoning regulations. A basic rule of statutory construction is that a statute should be construed in a manner that gives effect to the legislative purpose underlying the enactment. *E.g., Woodsmall v. Regional Transportation District,* 800 P.2d 63, 67 (Colo.1990); *Griffin v. S.W. Devanney & Co., Inc.,* 775 P.2d 555, 559 (Colo.1989). The stated goal of the Local Government Land Use Control Enabling Act is set forth in the legislative declaration of purpose and policy in section 29–20–102, 12A C.R.S. (1986), which also contains the statement relied on by Conda and the State Land Board:

The general assembly hereby finds and declares that in order to provide for planned and orderly development within Colorado and a balancing of basic human needs of a changing population with legitimate environmental concerns, the policy of this state is to clarify and provide broad authority to local governments to plan for and regulate the use of land within their respective jurisdictions. Nothing in this article shall serve to diminish the planning functions of the state or the duties of the division of planning.

To effectuate the statutory goal of planned and orderly land use and development within the state, the Local Government Land Use Control Enabling Act grants counties the authority to plan for and regulate the use of land by various means, which include: protecting land from activities which might cause foreseeable material damage to wildlife habitat; regulating land use on the basis of its impact on the community or surrounding areas; and planning for and regulating land use so as to provide for the protection of the environment. § 29–20–104(1)(b), (g), & (h), 12A C.R.S. (1986). A statutory delegation of authority such as this confers "all implied powers reasonably necessary to the proper exercise of the expressly delegated power." *Beaver Meadows v. Board of County Commissioners of Larimer County,* 709 P.2d 928, 932 (Colo.1985). The inference that Conda and the State Land Board would draw from the last sentence of section 29–20–102 is at odds with the overriding purpose of the Local Government Land Use Control Enabling Act.

Viewed in the context of the policy and purpose of the Local Government Land Use Control Enabling Act, the statutory language relied on by Conda and the State Land Board represents nothing more than an expression of legislative intent that the grant of authority to local governmental units is not a replacement for the statewide land use planning function reposed in other state bodies, such as, for example, the Division of Planning[13] and the Colorado Land Use Commission.[14] What the General As-

---

**13.** The Division of Planning is in the Department of Local Affairs, § 24–32–202, 10A C.R.S. (1988), and its duties are outlined in section 24–32–203, 10A C.R.S. (1988), as follows:

(a) Provide planning assistance upon request to any town, city, city and county, county, regional area, or group of adjacent communities having common or related planning problems; and, whenever such assistance includes the rendering of technical services, such services may be rendered without charge or, upon advance agreement, shall be rendered with reimbursement;

(b) Provide information to and cooperate with the general assembly or its committees concerned with studies relevant to local and regional planning;

(c) Supply to the public and to officials of state departments and local agencies available information on local and regional planning problems and community development;

(d) Accept and receive grants and services relevant to local and regional planning from the federal government, other state agencies, local governments, and private and civic sources.

**14.** The Colorado Land Use Act recognizes the increasing mutuality of interests and responsibilities among the various levels of government in land use planning and development, § 24–65–102, 10B C.R.S. (1988), and establishes a Land Use Commission with authority to develop a total land use planning program for the state. § 24–65–103, 10B C.R.S. (1988). The

sembly contemplated by the last sentence of section 29–20–102, in our view, is that a local government's authority to regulate land use and development should, to the extent practicable, be exercised in harmony with any total land use planning for the state. To adopt the construction urged by Conda and the State Land Board would significantly impair the stated legislative purpose of providing "broad authority to local governments to plan for and regulate the use of land within their respective jurisdictions."

The County Planning Code also echoes the theme of broad local control over land use and development. This statute vests counties with the authority "to provide for the physical development of the unincorporated territory within the county and for the zoning of all or any part of such unincorporated territory" in a manner set forth in the statute. § 30–28–102, 12A C.R.S. (1986). The term "unincorporated" refers to land "situated outside of cities and towns," so that the term "unincorporated territory" includes and "relates to territory or areas which are not within the boundaries of any city or town." § 30–28–101(12), 12A C.R.S. (1986). Although the County Planning Act exempts certain types of land from the counties' regulatory authority, § 30–28–101(10), 12A C.R.S. (1986); *see Pennobscot, Inc. v. Board of County Commissioners of Pitkin County,* 642 P.2d 915, 918–19 (Colo. 1982), the statute contains no such exemption for school lands.

We are satisfied that if the General Assembly had intended to exclude school lands from county zoning regulations, there would have been some expression of that intent in one or more of the statutory schemes dealing with local zoning authority and local land use planning and development. Furthermore, what is particularly significant in our view is the fact that the Reclamation Act expressly defines "affected land" very broadly to mean "the disturbed surface of an area within the state where a mining operation is being or will be conducted," § 34–32–103(1), 14 C.R.S. (1984), and contains no exemption for school lands. In the absence of a clear expression of legislative intent in any of the pertinent statutory schemes to exclude school lands from county zoning regulations, we conclude that the General Assembly in enacting the Reclamation Act intended to authorize counties to exercise zoning authority over school lands.

## B.

■ A county's zoning authority over school lands, of course, is not unlimited. The statutory scheme outlining the authority and responsibilities of the State Land Board expressly provides that, while leases of state lands must meet all federal, state, and local land use regulations, the local land use regulations must not be applied "in a discriminatory manner to public lands under the control of the [State Land Board]." § 36–1–120.5(3), 15 C.R.S. (1990). We are satisfied that Boulder County's Zoning Resolution does not discriminate against school lands located in Boulder County and leased by the State Land Board for mining operations.

Pursuant to Boulder County's statutory authority to enact zoning regulations, the Board of County Commissioners of Boulder County enacted a Boulder County Zoning Resolution, with an effective date of December 17, 1985. The school lands leased by Conda were designated as "Forestry," and the Boulder County Zoning Resolution contains specific standards and conditions for approval of a special-use permit for mining operations on such land. Boulder County, Colorado, Zoning Resolution §§ 20–301 & 302 (1985). The Boulder County Zoning Resolution does not eliminate mining operations in Boulder County. Rather, the Zoning Resolution sets forth standards and conditions for mining operations in a manner calculated to effectuate the county's land use policy. Neither

statutory scheme contemplates that the Colorado Land Use Commission, in developing its land use planning program, "shall recognize that the decision-making authority as to the character and use of land shall be at the lowest level of government possible consistent with the purposes of this article." § 24–65–104(1)(b), 10B C.R.S. (1988).

school lands nor Conda's proposed mining operations are singled out for special standards and conditions not equally applicable to any other open mining operation conducted on non-school lands in unincorporated territory within the county. Although the Zoning Resolution might well limit the amount of mining that Conda can conduct on school lands within Boulder County, limitation on land use is "one of the fundamental purposes of zoning." *Famularo v. Board of County Commissioners of Adams County*, 180 Colo. 333, 338, 505 P.2d 958, 960 (1973). Boulder County's zoning regulations neither discriminate against school lands within the county, nor were such regulations applied in a discriminatory manner to the school lands leased by Conda.

## IV.

■ We turn to Conda's and the State Land Board's claim that the Mined Land Reclamation Act's prohibition against the issuance of a permit for proposed mining operations which would violate county zoning regulations unconstitutionally infringes on the authority of the State Land Board over the direction, control, and disposition of public lands and impairs the State Land Board's ability to put such lands to maximum use as a revenue source for public schools. We are not persuaded by this claim.

### A.

■ To be sure, the Colorado Constitution grants the State Land Board the authority to direct, control, and dispose of the public lands of the state. Colo. Const. art. IX, § 9. The Constitution also requires the State Land Board to exercise its authority not only "under such regulations as are and may be prescribed by law" but also "in such manner as will secure the maximum possible amount" for the lands under its direction, control, and disposition. We previously considered the manner in which these dual responsibilities could be reconciled in *In re Leasing of State Lands*, 18 Colo. 359, 32 P. 986 (1893). In that case, the question was whether a statutory limitation of five years for leases of public lands infringed on the constitutional authority vested in the State Land Board by Article IX of the Colorado Constitution. The court began its analysis by emphasizing that the constitutional provisions requiring the State Land Board to act "under such regulations as may be prescribed by law" means "such reasonable rules as may be prescribed from time to time, by the legislative department of the government." 18 Colo. at 364, 32 P. at 988. The court reasoned that the State Land Board "must first look to the statutes to ascertain the regulations therein prescribed, and then, in exercising their constitutional powers, they must so act as in the judgment of the board will secure the maximum amount, under the prescribed regulations." *Id.* It would be useless, the court reasoned, to authorize the legislature to prescribe regulations "if such regulations might be ignored whenever, in the judgment of the board, a greater revenue might be secured to the state by adopting a course in conflict with the statute." 18 Colo. at 365, 32 P. at 988. The constitutional scheme, in other words, does not contemplate that the State Land Board can ignore a reasonable legislative regulation for the purpose of carrying out its constitutional responsibility of securing "the maximum possible amount" for public lands. This is not to say, however, that all legislative regulations will necessarily be binding on the State Land Board in its operations. Indeed, the court in *In re State Lands* hastened to add that "[s]hould the legislature, under the guise of regulations, attempt to take away all power of disposition of the state lands from the state board, or should laws be enacted for the manifest purpose of favoring other than the highest bidder, such acts would be manifestly in violation of the constitution, and void." *Id.*

This court's subsequent decision in *In re Canal Certificates*, 19 Colo. 63, 34 P. 274 (1893), exemplifies the type of legislative infringement on the board's authority proscribed by the Colorado Constitution. In *Canal Certificates*, the legislature enacted a series of statutes calculated to facilitate the construction and completion of State Canal No. 1 and related reservoirs. The

statutory scheme created a State Board of Control for State Canal No. 1 and authorized the State Land Board, in conjunction with the Board of Control, to offer for sale at not less than minimum price "every alternate quarter section of the state and school lands lying under the said canal." 19 Colo. at 66, 34 P. at 275. The statute also provided for the issuance of certificates that could be used in lieu of money for the reasonable charge for the carriage of water by the canal or for perpetual water rights in the canal. In holding that the statutory scheme diverted the school lands and the proceeds therefrom "from the use and benefit of the respective objects for which the grants were made," and thereby infringed upon the constitutional authority of the State Land Board, the court stated:

> By the act under consideration the legislature is attempting to give to a body of its own creation authority to exercise, conjointly with the state board of land commissioners, powers vested absolutely in the latter by the fundamental law of the state....

> If the legislature may require the state board of land commissioners to act in conjunction with the board of control of State Canal No. 1, in disposing of the lands under that canal, it may likewise create other boards to act in like manner in other instances, and thereby entirely destroy the independence of the board created by the constitution. The provision is in no sense such a regulation as that contemplated by the constitution, and cannot be upheld.

19 Colo. at 69–70, 34 P. at 276.[15]

### B.

The principles first articulated in *In re Leasing of State Lands* and *In re Canal Certificates* provide the framework for our resolution of Conda's and the State Land Board's constitutional challenge to those provisions of the Reclamation Act which require compliance with county zoning regulations. The multiple goals of the Mined Land Reclamation Act are set forth in the legislative declaration of purpose. The purposes of the Reclamation Act are several: to encourage the continued development of the mining industry in Colorado; to require mining operators to reclaim the affected land in a manner conducive to beneficial use; to conserve natural resources, to protect wildlife and aquatic resources, and to establish agricultural, recreational, residential, and industrial sites; and to promote the health, safety, and general welfare of the people of the state. § 34–32–102, 14 C.R.S. (1984). The General Assembly has expressly acknowledged that the attainment of these goals would be virtually impossible if mining operations were to be excused from compliance with local governmental regulations on land use and development. *See* § 34–32–109(6) (nothing in Reclamation Act shall be construed to preempt zoning and land use authority of political subdivisions acting pursuant to Local Government Land Use Control Enabling Act, County Planning Code, and Municipal Planning Act.).

It is for the purpose of achieving these statutory goals that the Reclamation Act sets forth standards and conditions for the issuance of mining permits. The statutory standards and conditions, as pertinent here, prohibit the Reclamation Board from granting a permit in violation of county zoning or subdivision regulations. § 34–32–109(6), 14 C.R.S. (1984). In addition, the Reclamation Board is prohibited from granting a

---

**15.** *Compare Sunray Mid–Continent Oil Co. v. State Board of Agriculture,* 149 Colo. 159, 368 P.2d 563 (1961) (statute requiring State Land Board to obtain approval of State Board of Agriculture in executing mineral lease on Fort Lewis school lands unconstitutionally infringed on State Land Board's authority over such lands) *and In re Loan of School Fund,* 18 Colo. 195, 32 P. 273 (1893) (statute authorizing loan of $650,000 from public school fund to general revenue funds for three years invalidated as illegal attempt to divert school funds for other purpose) *with Evans v. Simpson,* 190 Colo. 426, 547 P.2d 931 (1976) (in absence of statutory prohibition, State Land Board could include specific power of cancellation in lease) *and Walpole v. State Board of Land Commissioners,* 62 Colo. 554, 163 P. 848 (1917) (statute requiring conveyance in fee of public lands sold by State Land Board prohibited board from including a mineral reservation in certificate of purchase).

permit for a new mining operation "if the operator's reclamation plan for an area is inconsistent with an adopted plan by any county ... unless a prior declaration of intent to change or waive the prohibition is obtained by the applicant from the affected government subdivisions." § 34–32–109(8), 14 C.R.S. (1984). The Reclamation Board, in short, is authorized to grant a permit only when the applicant complies with the requirements of the Reclamation Act and "all applicable local, state, and federal laws." § 34–32–115(4), 14 C.R.S. (1984).

We are satisfied that the Reclamation Act's requirements with respect to county zoning regulations do not divest the State Land Board of its authority to direct, control, and dispose of school lands. Nor do such requirements obligate the State Land Board to act conjointly with local governmental units in deciding to lease school lands. On the contrary, the Reclamation Act reflects a legislative decision to condition a mining permit on compliance with county zoning regulations in a manner consistent with the express purposes of the statute. So also, the fact that the Reclamation Board adheres to the statutory standards for the issuance of a mining permit does not result in diverting revenues from the public school fund. The constitutional grant of authority to the School Land Board to dispose of school lands in such manner as will secure the "maximum possible amount therefor," Colo. Const. art. IX, § 10, was not intended as a license to disregard reasonable legislative regulations simply because compliance with such regulations might reduce the amount of revenues otherwise available from the leasing of school lands. *In re Leasing of State Lands*, 18 Colo. at 365, 32 P. at 988.

To exclude the State Land Board's leasing of school lands from the compliance requirements of the Reclamation Act would nullify the constitutional authority of the General Assembly to impose reasonable legislative regulations on the State Land Board's direction, control, and disposition of school lands. Such exclusion also would contravene the express legislative policies, articulated not only in the Reclamation Act but also in other statutory enactments—

*e.g.*, the Local Government Land Use Control Enabling Act of 1974, § 29–20–102, 12A C.R.S. (1986); the County Planning Code, § 30–28–102, 12A C.R.S. (1986); the Municipal Planning and Zoning Act, §§ 31–23–202 & 31–23–301, 12B C.R.S. (1986)—of vesting counties, cities, and towns with the authority to regulate land use and development within their respective jurisdictions in a manner consistent with the orderly growth and development of communities and the health, safety, and welfare of local inhabitants. We thus conclude that the provisions of the Reclamation Act requiring compliance with county zoning regulations represent nothing more than the type of legislative regulation contemplated by Article IX, sections 9 and 10 of the Colorado Constitution.

## V.

■ The last issue we address is whether the court of appeals erred in holding that the language of Conda's leases requiring compliance with "all laws" is broad enough to encompass "reasonable zoning regulations." *Conda*, 782 P.2d at 853. In challenging this holding, Conda and the State Land Board argue that the term "all laws" is modified by the words "whether State or Federal," that Conda leases were executed prior to the enactment of the Reclamation Act and were not intended to require compliance with local zoning regulations, and that the court of appeals' holding renders Conda's leases unconstitutional by permitting the lessee to waive the exclusive authority of the State Land Board over school lands. We find these arguments devoid of merit.

As previously discussed, the Reclamation Act requires that a mining permit be conditioned on compliance with county zoning regulations. §§ 34–32–109(6) & 34–32–115, 14 C.R.S. (1984). The fact that the mining lease does not expressly include the term "zoning regulations" does not vitiate this overriding statutory requirement. In addition, the Conda leases expressly provide that Conda will fully comply with all state laws, and it is "state law" that mandates Conda's adherence to county zoning regula-

tions in its mining operations. Finally, as also previously discussed, the statutory requirement of compliance with county zoning regulations does not divest the State Land Board of its exclusive authority over public lands but rather constitutes a form of reasonable legislative regulation within the contemplation of Article IX, sections 9 and 10 of the Colorado Constitution.

The judgment of the court of appeals is accordingly affirmed.